**Carl J. CINI, Plaintiff,**

v.

**The PAUL REVERE LIFE INSURANCE COMPANY, Defendant.**

No. Civ.A. 98–1701.

United States District Court, E.D. Pennsylvania.

June 7, 1999.

John Cordisco, Cordisco and Bradway, Bristol, PA, for plaintiff.

Andrew Susko, White and Williams, Phila., PA, for defendant.

### MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Plaintiff Carl J. Cini ("Cini") initially filed suit in the Court of Common Pleas of Philadelphia County against the Paul Revere Insurance Company ("Paul Revere") alleging that Paul Revere wrongfully denied his claim for residual long term disability benefits under a group disability insurance policy. Paul Revere removed the action to this Court pursuant to federal question jurisdiction under the federal Employee Retirement Insurance Security Act of 1974, 29 U.S.C. § 1001, et seq., as amended ("ERISA"). Presently before the Court is the motion of Paul Revere for summary judgment (Document No. 14) and response of plaintiff Cini and the reply of Paul Revere thereto. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. For the reasons set forth below, the motion will be granted.

### I. Background[1]

Cini is an account manager for Fishers Ambulance Service. According to his employer, Cini is the coordinator of all paperwork generated daily by the company. Each day Cini makes sure all the work is turned in and recorded. Cini also keeps a record log of all completed work. Not only is Cini the primary quality control person but he also is in charge of distributing paperwork to various billing staff to process and maintains contact with the various facilities and customers with which his employer deals. Cini's duties include filing, dispatching, personnel evaluations and all the statistical analysis required by the company and its customers. Cini's duties also require him to work on a computer. (Appendix of the Motion for Summary Judgment of Defendant, Paul Revere Life Insurance Company, ("Def.App.") at 57).

The genesis of this lawsuit began in January of 1997, when Cini made a claim against Paul Revere for residual long term disability benefits. The claim presented a primary diagnosis as spondylolisthesis, a condition which Cini had since 1963 and with which he had been working 20 hours per week as of December 16, 1996, and a secondary diagnosis of fibromyalgia.[2] Under the terms of the policy, there is a 90 day non-payable elimination period, which is the "length of time that the employee must wait before benefits

---

1. The facts in this memorandum are either not in dispute or were in the files of Paul Revere at the time Paul Revere evaluated and denied Cini's claim.

2. Spondylolisthesis is the forward displacement of one vertebra over another, usually of the fifth lumbar over the body over the body of the sacrum, or the fourth lumbar over the fifth, usually due to a developmental defect in the pars interarticularis. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1563 (28th ed.1994).

Spondylolysis is the dissolution of a vertebra. *Id.*

Fibromyalgia was not defined. *See id.* However, myalgia is pain in a muscle or muscles. *Id.* at 1085. Fibro relates to fibers. *Id.* at 627. Thus, it can be inferred that fibromyalgia is pain in fibromuscular tissue. *See id.* at 628, 1095 (defining myositis as the inflammation of a voluntary muscle and fibromyositis as the inflammation of fibromuscular tissue.).

begin" and "during this elimination period, you must be totally disabled from your own occupation." (Def.App. at 255, 267). On February 6, 1997, Cini's claim was denied because Cini's Statement for partial or residual disability benefits only indicated a reduction in hours and, therefore, Cini had not met the 90 day elimination period.

In response to the denial, Cini informed Paul Revere that he had had an accident on September 1, 1996, and was out of work thereafter until December 16, 1996. Thereafter, Paul Revere received a corroborating correspondence from Cini's employer, informing it that Cini had been accidentally injured on September 1, 1996, and out from work from September 2nd until December 6th and had been working part-time since his return on December 16th. (Def.App. at 39). Paul Revere then informed Cini that under the circumstances, his claim would be reconsidered.

On March 20, 1997, Paul Revere sent Cini's claim to Michael Theerman, M.D., for an independent review. On April 9th, Paul Revere denied Cini's claim for failure to meet the elimination period. On June 19th, Cini appealed the denial. Paul Revere sent Cini's claim file to Marvin Goldstein, M.D., for an independent review. On August 16th, Paul Revere again denied Cini's claim because his doctor had recommended that he return to work prior to the end of the elimination period. After some administrative confusion, Paul Revere reopened the administrative record again for reconsideration of Cini's claim. Again, Paul Revere sent the augmented medical record to Goldstein for review and again Paul Revere denied Cini's claim because he failed to meet his burden of proving total disability during the ninety day elimination period beginning September 2, 1996.

The medical records available and reviewed by Paul Revere show that Cini

suffered from spondylolisthesis since 1963. (Def.App. at 6). He has a long history of chronic low back pain. Over the last several years, however, his back was causing Cini more pain. In particular, his doctor noted that prolonged sitting was causing Cini problems. (*Id.* at 32).

On September 1, 1996, Cini fell from a horse and fractured his right clavicle (the collar bone). (Def.App. at 33). On September 3rd, Cini saw Dane Wukich, M.D., an orthopedist, for treatment of his fractured clavicle. (Cini's family physician, Joseph O'Neill, M.D., referred Cini to Wukich.) On an October 17th follow-up visit, Cini's clavicle was x-rayed. The x-ray showed no callus formation. (Def.App. at 26). Office notes from the visit also indicate that Cini had less motion and tenderness at the fracture site. (Def.App. at 34).

Wukich's office notes also reflect that Cini was experiencing increased back pain. Wukich noted that in the last seven to eight years Cini had gained a significant amount of weight and that "a weight reduction program would, in all likelihood, help his back pain to a great degree." (Def.App. at 31, 32). Nevertheless, Wukich ordered an MRI. The results of an October 30th MRI showed a bilateral spondylolysis and Grade I spondylolisthesis in his lower back. However, this condition had not changed since the previous study done a year earlier. (Def.App. at 28). There was no compression fracture or degenerative disk disease. (*Id.*). The apophyseal joints were normal and the bony pelvis and hips were intact. (*Id.*).

Wukich saw Cini again on in November of 1996. In a letter to O'Neill dated November 26th, Wukich noted that Cini's pain was "definitely less" but that the x-ray of Cini's clavicle showed there was "no significant healing." (Def.App. at 36). Nevertheless, Wukich stated that "clinically I know that it is healing."[3] (*Id.*). Wu-

---

**3.** Wukich saw Cini again on January 9, 1997. On examination, there was no longer any tenderness at the fracture site. X-rays showed satisfactory position and alignment.

Although there was still no radiographic sign of healing, Wukich concluded that as of January 9th, the clavicle had "gone to a clinical

kich stated that he explained to Cini that his spondylolisthesis was rather mild and that "a fair number of people have it without being symptomatic." (*Id.*). Finally, Wukich wrote that "[Cini] also feels that he is unable to work full time 40 hours per week. I've asked him to talk to work about considering four hours per day. He'll get back to us with that." (*Id.*).

Wukich then referred Cini to Robert Moidel, M.D., a rheumatologist, for his back problems. Moidel saw Cini for the first time on December 12, 1996. His initial impression was that Cini "probably has fibromyalgia which is mainly affecting his back area." (Def.App. at 124). Moidel recommended that Cini do low impact aerobic exercises. In a follow-up letter to Cini's attorney dated June 13, 1997, Moidel confirmed his prior diagnosis of fibromyalgia. (*Id.* at 106). Moidel also explained that patients who have fibromyalgia often experience more pain when they are sedentary and often feel better when they are physically active. (*Id.*). Thus, he had recommended low impact aerobic exercises. Moidel further stated that "for a period of several months at the end of 1996 [Cini] was partially disabled from a combination of his right clavicular fracture and fibromyalgia symptoms." (*Id.*).

Also in a follow-up letter to Cini's attorney, Wukich stated that Cini had suffered from a delayed union of the clavicle fracture and in addition had a diagnosis of fibromyalgia, chronic low back pain and some post-immobilization adhesive capsulitis of this shoulder. Wukich opined that Cini was disabled as a result of the clavicle fracture from September 1, 1996 until the May 22, 1997. (*Id.* at 107).

In its denial of August 16, 1997, Paul Revere addressed each of the alleged disabling conditions. (Def.App. at 137). Specifically, with respect to Cini's fractured clavicle, on November 26, 1996, Wukich reported that Cini's pain was "definitely

less" and that although the x-ray did not reveal fracture callus, "clinically I know that it is healing and that it's a little bit early to see the fracture callus." (Def.App. at 36). With respect to Cini's diagnosis of spondylolisthesis, Paul Revere noted that Wukich had explained to Cini that "his spondylolisthesis is rather mild." (Def.App. at 138). Finally, with respect to Cini's diagnosis of fibromyalgia, Paul Revere observed that Moidel recommended low impact aerobics and stated that Cini was only partially disabled for a period of months at the end of 1996.[4] Paul Revere also noted that shortly after Cini's diagnosis of fibromyalgia, he returned to work on a part-time basis. Thus, Paul Revere concluded that Cini had not shown a level of impairment which precluded him from performing his occupation on a full-time basis through the ninety day elimination period which expired on or about December 1, 1996.

After Paul Revere denied Cini's claim on August 16, 1996, Cini submitted two letters of "clarification" from Moidel and Wukich. On September 25, 1997, Moidel wrote that he wished to correct his letter of June 13, 1997, wherein he stated that Cini was only partially disabled at the end of 1996. Moidel explained that what he really meant was that Cini was totally disabled for several months at the end of 1996 and only partially disabled as of December 16, 1996. (*Id.* at 147).

Wukich's clarification letter of September 25, 1997 stated that he "did not release [Cini] to return to work on 11/26/96." (Def.App. at 146). Wukich explained that he told Cini to discuss the possibility that he might be able to work part time. Wukich instructed Cini to "get back to him" at which time Wukich would discuss the situation with Cini and make a determination of whether Cini was capable of returning to work. (*Id.*). Wukich stated that on November 26, 1996, he referred Cini to a

---

union." (Def.App. at 81, 119). An x-ray taken May 22, 1997, showed that the fracture had healed.

4. Wukich declined to render an opinion regarding whether the fibromyalgia was disabling. (Def.App. at 107).

rheumatologist and, therefore, it was his opinion that Cini was not released to work until after he had seen Moidel later in December of 1996. (*Id.*).

After receiving this additional information, Paul Revere, in its terms, "exceptionally" re-opened the administrative record. Paul Revere again sent the whole record to Goldstein for an independent review. Goldstein found that Moidel's letter of September 25, 1997 was inconsistent with his earlier letter. (Def.App. at 158). Additionally, Wukich's denial that he released Cini to work did not alter Goldstein's opinion that Wukich's comments on November 26, 1996, showed that Cini was capable of returning to work. Goldstein also noted that Wukich never mentioned the clavicle fracture in the Attending Physician Statement accompanying Cini's initial claim for disability benefits. Finally, Goldstein noted that despite Wukich's assertion that Cini was not released to work until after he had seen Moidel, none of Moidel's notes mention Cini's work status.

## II. Legal Standard

Defendant has moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment. Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted when, "after considering the record evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). For a dispute to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party may not rely merely upon bare assertions, conclusory allegations, or suspicions. *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir.1982).

## III. Discussion

Under ERISA, the applicable standard of review for a denial of benefits pursuant to 29 U.S.C. § 1132 depends upon the actual language in the plan. An administrator's factual findings and plan interpretation are reviewed *de novo* if the ERISA-defined plan does not grant the administrator discretion to make determinations with regard to employee benefits. *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 438 (3d Cir.1997); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112–13, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). When a plan grants an administrator discretionary authority, an administrator's factual finding and plan interpretation are reviewed under an arbitrary and capricious standard. *Mitchell*, 113 F.3d at 438–39.

The parties agree that an arbitrary and capricious standard of review applies here because the Plan in question grants Paul Revere the requisite discretion to interpret the Plan's terms. Accordingly, the Court must, as a matter of law, review the administrator's decision to deny Cini benefits under an arbitrary and capricious standard. An administrator's decision is arbitrary and capricious where it is "without reason, unsupported by substantial evidence, or erroneous as a matter of law." *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir.1993) (internal quotations omitted). When considering whether an administrator's decision was arbitrary and capricious, the Court may only consider the evidence which was before the plan administrator at the time of the final denial. *Mitchell*, 113 F.3d at 440. Provided that the plan administrator's decision is rational, the Court is not free to substitute its own judgment for that of the plan administrator's in determining the eligibility for plan benefits even if the Court disagrees with the decision of the plan

administrator. *Mitchell*, 113 F.3d at 439; *Abnathya*, 2 F.3d at 45.

■ In its final denial letter of November 29, 1997, Paul Revere determined that Cini had not shown that he was totally disabled for entire elimination period. Specifically, Paul Revere considered Wukich's explanation that his letter of November 26, 1996, was not intended to be a work release. Paul Revere determined that November 26th letter nevertheless showed that Cini was in fact capable of resuming his occupational duties on a part-time basis, but simply needed to verify with his employer that such an accommodation was available.

Paul Revere reiterated that the objective medical evidence did not support a finding of total disability. The pain from his right clavicle was less, his doctor was convinced that it was healing properly, his MRI reflected no change (from a prior MRI taken when Cini was working full-time) and his spondylolisthesis was mild. Thus, Paul Revere concluded that as of November 26, 1996, neither the fracture which occurred on September 1, 1996, nor his spondylolisthesis caused a level of impairment such that Cini was precluded from returning to work for four hours a day.

Similarly, with respect to Cini's diagnosis of fibromyalgia, Paul Revere noted that Cini's appointment with Moidel did not occur until December 12, 1996, and that the findings were unremarkable. Although Moidel noted that likelihood of fibromyalgia, his only recommendation for treatment was low impact aerobics—not a restriction of any occupational duties. Thus, Paul Revere determined that Cini's fibromyalgia did not present a level of impairment between November 26, 1996, and December 12, 1996, which prevented Cini from returning to work.

Paul Revere also noted that on his original claim form, Cini indicated that he could only perform the occupational duties of an accounts manager for 20 hours per week due to the symptoms associated with spondylolisthesis and fibromyalgia (there was no mention of disability based upon problems associated with his fractured clavicle). In his original Attending Physician's Statement, Dr. Wukich stated that Cini was precluded from performing heavy lifting and prolonged sitting or standing.

After examining the entire record and the conclusions drawn by Paul Revere based upon that record, the Court cannot find that Paul Revere's denial of benefits was arbitrary and capricious. Cini had the burden of providing to Paul Revere proof that he qualified for benefits under the policy. Paul Revere determined that Cini failed to satisfy this burden. I find that Paul Revere conducted a thorough review of Cini's claim and provided reasonably cogent reasons why the evidence offered did not satisfy Cini's burden of establishing the he was totally disabled as defined by the policy during the entire elimination period.

Paul Revere's decision was not without reason, unsupported by the substantial evidence or erroneous as a matter of law. There is clinical evidence in the record that Cini's clavicle was sufficiently healed such that he could return to work on a part-time basis.[5] Additionally, his spondy-

---

5. While it is true that Wukich stated that he believed Cini to be disabled as a result of the fractured clavicle until May 22, 1997 (when x-rays showed fracture callus), his opinion is refuted by the fact that Cini had been working since December 16, 1996. It is also inconsistent with his earlier statement on November 26, 1996 that the clinical evidence indicated that the fracture was healing despite the fact that a callus was not apparent by x-ray. In addition, it is completely at odds with his statement that clinically the clavicle had healed more than five months prior to May 22, 1997. Finally, in his initial Attending Physician's Statement Wukich makes no mention of a clavicle fracture as a disabling condition. Nor has Cini provided any evidence that he could not perform the functions of his occupation as an account manager because of his fractured clavicle and certainly not after it showed signs of healing and it was no longer causing him pain. Thus, Paul Revere's conclusion that Cini had failed to demonstrate that he was totally disabled as a result of the clavicle fracture after November 26, 1996, is

lolisthesis was mild and had remained unchanged for over a year (during which time Cini was working). Similarly, there is no evidence that his fibromyalgia prevented him from working part-time between November 26, 1996, and December 12, 1996 (when he saw Moidel). Cini simply did not produce evidence which convinced Paul Revere that he had an impairment of a totally disabling proportion for the entire elimination period.

Cini nevertheless argues that there are factual issues which preclude the granting of summary judgment. Cini argues that there is a factual dispute over whether Paul Revere considered either of the clarification letters submitted after his August 16, 1997 denial. It is clear that both letters were reviewed and commented on by Goldstein (to whom Paul Revere sent the record for an independent view). Goldstein found that Moidel's letter was "inconsistent" with his earlier statements. Also, Wukich's letter did not alter Goldstein's view that Cini was capable of working as of November 26, 1996. Finally, Paul Revere cited Wukich's clarification letter in its final denial. Thus, the record does not support Cini's contention that Paul Revere ignored his physician's attempt to clarify their prior reports.

Cini also argues that Paul Revere disregarded the results from his x-ray taken on November 26, 1996 which did not show a fracture callus. On the contrary, Paul Revere explicitly referred to the x-ray. However, Paul Revere considered it in the context of Wukich's determination that although the x-ray does not show signs of healing, Wukich "knew" that clinically it was healing, that it was early for an x-ray to show the formation of a fracture callus and that Cini was definitely feeling less pain. Thus, the record indicates that Paul

Revere considered the x-ray, but that in light of Wukich's conclusion that Cini was healing in combination with the diminution in pain, decided that the lack of callus formation did not indicate the existence of a totally disabling impairment.

Finally, Cini argues that Paul Revere did not consider that Cini was right hand dominant. To this end, Cini has attached an affidavit attesting to the fact that he is right hand dominant. However, in reviewing the decision of a plan administrator to deny benefits under an arbitrary and capricious standard, the review is limited to the evidence that was before the plan administrator at the time of its decision. *Mitchell,* 113 F.3d at 440. Cini's late submission is beyond the evidentiary scope of this appeal and will be disregarded.[6]

### IV. Conclusion

Because there are no genuine issues of material fact and because Paul Revere's decision was not arbitrary and capricious, the motion will be granted. An appropriate Order follows.

---

not unreasonable or unsupported by the substantial evidence.

**6.** Cini also argues that there is a factual dispute over whether the Paul Revere had substantial evidence to support the denial of benefits. Cini misconstrues that nature of his argument. In truth, he is simply arguing that

Paul Revere's decision was arbitrary and capricious because it did not have substantial evidence to support its decision. This is not a factual dispute. The Court has already explained that the denial of benefits was not unreasonable, was based upon a rational analysis of the evidence available and, therefore, was not arbitrary and capricious.