Cynthia HOTALING, Plaintiff,

v.

**TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, Defendant.**

No. 98–CV–1029.

United States District Court, N.D. New York.

Aug. 23, 1999.

Getman Law Firm, Oneonta, New York, for plaintiff; Michael F. Getman, of counsel.

Hinman, Howard & Kattell, LLP, Binghamton, New York, for defendant; Albert J. Millus, Jr., of counsel.

## MEMORANDUM—DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff Cynthia Hotaling, a former employee of Hartwick College, commenced the present action against defendant Teachers Insurance and Annuity Association of America ("TIAA") pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to recover benefits claimed under the terms of a long term disability benefit plan (the "Plan"). Defendant now moves the Court for summary judgment dismissing Hotaling's claim for long term disability benefits or, in the alternative, moves *in limine* requesting that: (1) the action be tried by the Court rather than a jury; (2) the trial be limited to the administrative record upon which TIAA based its decision to discontinue plaintiff's long term benefits; and (3) Hotaling not be entitled to seek

recovery for prospective benefits in the event that judgment is entered in her favor after trial. *See* Def. Mem. of Law at 2.

## I. BACKGROUND[1]

In January 1997, plaintiff, former Director of Student Loans and Internal Collections at Hartwick College, applied for disability benefits alleging that she suffered from lower back pain which prevented her from sitting for extended periods of time. *See* Def. Notice of Motion, Ex. D, at 2–2A (hereinafter "Administrative Record"). Plaintiff first sought treatment for her back pain from her treating physician, Dr. Del Giacco, in July 1996. At that time, Dr. Del Giacco recommended a two-week leave of absence and physical therapy based on plaintiff's complaints of chronic lower back pain. Although plaintiff's treatment was beginning to provide her relief from her pain, Dr. Del Giacco extended plaintiff's leave of absence until September 1996. Upon re-examination in late August 1996, Dr. Del Giacco concluded that:

> Patient is improving slowly but is still not ready to return to full work. I suggested that she discuss with her supervisor a trial of 2 hours of work daily to see how things go.

Administrative Record at 92; *see also* Def. 7.1(a)(3) Stat. at ¶ 6.

In October 1996, plaintiff was referred to a second treating physician, Dr. Elting, who determined that Hotaling "[was] disabled and has a good deal of pain." Administrative Record at 94. Shortly thereafter, however, Dr. Elting concluded that plaintiff's condition may not qualify her as disabled, noting that:

> Hotaling returns with subjective complaints.... This is a rather difficult situation as we move along. This woman

appears to be making no efforts to even consider a return to work. I don't know whether she would really qualify as disabled from physical infirmity.

*Id.* at 95; *see also* Def. 7.1(a)(3) Stmt. at ¶ 7.

Around March 1997, plaintiff's physician noted that she was "doing much better" and that her condition was improving based on plaintiff's participation in an increased exercise program and physical therapy. *See* Administrative Record at 120. Around that time, defendant had plaintiff's file reviewed by its registered nurse, Joseph Brookes, who concluded that:

> Based on the information in the file ... [t]here is not sufficient documentation to support the limitation[ ] of no return to work. There is documentation that [Hotaling] could try a return to work for 2 hours per day. The position is sedentary without many physical requirements that may result in injury or exacerbation. There is also documentation regarding [Hotaling's] lack of motivation to consider a return to work, which is an area of concern since her functional ability is not greatly impacted.

*Id.* at 167; *see also.* Def. 7.1(a)(3) Stat. at ¶ 9.

Based on Brookes' recommendation, defendant requested that Hotaling undergo a Functional Capacity Evaluation which would assess her performance levels for a variety of work-related tasks. *See* Def. 7.1(a)(3) Stmt. at ¶ 10. That evaluation, conducted in May 1997, concluded that:

> [Hotaling] is capable of performing work at the light level as defined by the U.S. Department of Labor.... Based on this evaluation, [Hotaling] is incapable of

1. In connection with its motion for summary judgment, defendant properly filed a 7.1(a)(3) Statement detailing the material facts not in dispute. Plaintiff, however, did not file a responsive 7.1(a)(3) Statement; rather, she stated that she "does not object to defendant's statement of undisputed facts, except for de-

fendant's characterization in [p]aragraph 4 of [plaintiff's] initial application for disability benefits." Pl. Opp'n to Motion For Summ. J., at 1. Accordingly, with the exception of paragraph 4, the Court deems admitted the facts listed in defendant's 7.1(a)(3) Statement. *See* N.D.N.Y.L.R. 7.1(a)(3).

sustaining the light level of work for an 8–hour day.[2]

Administrative Record at 127–28.

The evaluation also assessed plaintiff's dynamic strength (ability to lift, carry, pull and push objects of varying weights) as "light"; her position tolerance (ability to stand and kneel) as "sedentary"; and her mobility (ability to climb, walk, and squat) as "medium."[3] *See id.* at 129–31. Significantly, plaintiff's position at Hartwick College was sedentary in nature and generally required her to work at her desk. Accordingly, plaintiff's position did not require her to perform physically demanding tasks on a regular basis. In June 1997, following defendant's review of plaintiff's medical evaluations and her Functional Capacity Evaluation, Hotaling was awarded disability benefits for the period February 1, 1997 through June 1, 1997.[4] *See id.* at 38–40.

After reviewing the findings in plaintiff's Functional Capacity Evaluation, Dr. Del Giacco stated:

> I agree with the findings ... [regarding] the functional ability of Ms. Hotaling. I anticipate an ability to return to part-time work with some limitations due to pain. She can perform only light or sedentary work and must have periodic rest periods due to pain.

*See id.* at 139.

When asked how many hours Hotaling was able to work in a day, Dr. Del Giacco recommended "one hour periods of steady work followed by fifteen minutes of rest." *Id.* at 144. Dr. Del Giacco further opined that:

> If Ms. Hotaling's work is to be limited strictly to sitting at a desk, I do not believe she will need the frequent rest

periods [previously described]. Based upon her Physical Work Performance Evaluation, I believe she should be able to work an eight-hour day of desk work with the usual breaks for stretching afforded to any employee.

*Id.* at 148.

Plaintiff disagreed with Dr. Del Giacco's findings. *See id.* at 54; Def. 7.1(a)(3) Stmt. at ¶ 14. After examining Hotaling in late July 1997, Dr. Del Giacco now reported:

> On examination [Hotaling] has decreased motion in the lumbar spine in all directions.... *She reports* that she is unable to sit for more than 15 minutes without back pain.... Based on her current symptoms and findings on exam I do not feel she is able to perform a job which requires prolonged sitting.

Administrative Record at 150 (emphasis added).

When pressed to submit objective evidence to support this diagnosis in light of his previous agreement with the results of plaintiff's Functional Capacity Evaluation, Dr. Del Giacco stated:

> I disagree with your assessment [as provided in the Functional Capacity Evaluation]. *This disagreement is based upon the patient's reported symptoms, hence I am not enclosing objective evidence to support this opinion.*

*Id.* at 161 (emphasis added); *see also* Def. 7.1(a)(3) Stmt. at ¶ 15.

After reviewing the Functional Capacity Evaluation, Dr. Elting, plaintiff's second treating physician stated:

> I do agree with the [F]unctional [C]apacity [E]valuation.... However, Ms. Hotaling's clinical situation is complex

---

**2.** The "light" level assessment placed plaintiff above "sedentary" but below "medium." *See* Administrative Record at 129.

**3.** A "light" dynamic strength level limited plaintiff to objects weighing between eleven and twenty pounds. A "medium" mobility level correlated with an ability to perform specific motion-related tasks between one-

third to two-thirds of the day. *See* Administrative Record at 129, 131.

**4.** Although plaintiff had sought treatment for her condition in July 1996, she did not apply for long term disability benefits until January 1997. *See* Administrative Record at 2–3.

and not the least of her worries is the fact that she had a pelvic mass removed in the not too distant past.

Therefore, there is a gulf between what she *can* do and what she *will* do. I believe I need not expand on this any further.

*Id.* at 152 (emphasis in original).

Finally, Ms. Buzzell, the physical therapist who performed the Functional Capacity Evaluation, reported that "Ms. Hotaling can work 4 hours a day, and after a month, increasing each week by an additional hour until she reaches 8 hours a day." *Id.* at 157. Ms. Buzzell limited her evaluation, however, to light duty. *See id.*

Based on the Functional Capacity Evaluation, and the objective evidence and findings of plaintiff's treating physicians and physical therapist, defendant found that plaintiff was no longer disabled as defined in the Plan, and discontinued her benefits after September 1, 1997.[5] *See id.* at 55–57. After plaintiff was unsuccessful in restoring her disability benefits, she brought suit in New York State Supreme Court in May 1998. Defendant removed the action to this Court in June 1998 pursuant to federal question jurisdiction under 29 U.S.C. §§ 1001 *et seq.*

## II. Discussion

### A. The Standard for Summary Judgment

The standard for summary judgment is well-settled. Under FED.R.CIV.P. 56(c), if there is no genuine issue as to any material fact, the moving party is entitled to a judgment as a matter of law "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 86 (1996). The

moving party bears the initial burden of "informing the … court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting FED. R.CIV.P. 56(c)). The initial burden is to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the moving party has met its burden, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Matsushita*, 475 U.S. at 585–86, 106 S.Ct. 1348. A dispute regarding a material fact is genuine if a reasonable jury could return a verdict for the non-moving party; that is, whether the non-movant's case, if proved at trial, would be sufficient to survive a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reasonable minds, however, could not differ as to the import of the evidence, then summary judgment is proper. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Although the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), the motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture

---

5. Defendant noted that Dr. Del Giacco's disagreement with plaintiff's Functional Capacity Evaluation was based upon symptoms reported to him by plaintiff, but that "he did not have objective evidence to support his opinion." Administrative Record at 56.

or surmise. *Delaware & H.R. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). Indeed, the nonmoving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).

The Court must first address the threshold issue of the appropriate standard of review governing plaintiff's denial of disability benefits under the Plan. Central to this determination is the nature of discretionary authority reserved by the Plan.

### B. Standard of Review

■ In arguing that this Court apply an arbitrary and capricious standard in reviewing defendant's decision to deny plaintiff long term disability benefits under the Plan, defendant relies on the Supreme Court's decision in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).[6] In *Firestone*, the Court held:

> Consistent with established principles of trust law, we hold that a denial of benefits challenged under [section] 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan.

489 U.S. at 115, 109 S.Ct. 948.

■ In cases where the language in the plan sufficiently reserves such discretionary authority, "denials are subject to the more deferential arbitrary and capricious standard, and may be overturned only if

the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 248–49 (2d Cir.1999) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995)). The burden is on the plan administrator to prove that the arbitrary and capricious standard of review should be applied. *See id.* (citing *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir.1995) ("[W]e believe that the Pension Committee bears the burden of proof on [the issue of which standard of review should be applied] since the party claiming deferential review should prove the predicate that justifies it.")).

■ In *Kinstler*, the Second Circuit interpreted *Firestone* as requiring courts, in the absence of an explicit reservation of discretionary authority, to apply a *de novo* standard when reviewing issues of fact (such as denial of benefits) and issues of plan interpretation. *See Kinstler*, 181 F.3d at 250. In noting that its holding was consistent with other circuit courts, the *Kinstler* Court recognized "the relative ease with which ERISA plans may be worded explicitly to reserve to plan administrators the discretionary authority that will insulate all aspects of their decisions from de novo review." *Id.* The critical question, therefore, is whether "the policy language is sufficient to reserve to itself the discretionary authority that invokes the arbitrary and capricious standard of review." *Id.* at 251. This necessarily requires an examination of the language in the Plan addressing proof of disability:

> TIAA must receive in writing both notice of claim and proof of [d]isability within twelve months after the start of the [d]isability.
>
> Written proof of continued [d]isability is required at reasonable intervals to be

6. In her opposition, plaintiff states that she "concurs with defendant's statement of the applicable law." Pl. Opp'n to Motion for Summ. J., at 2. The Court notes, however, that it is "not bound to accept a stipulation regarding a question of law." *VanVolkenburg v. Continental Cas. Co.*, 944 F.Supp. 198, 201 (W.D.N.Y.1996) (citing *Sinicropi v. Milone*, 915 F.2d 66, 68 (2d Cir.1990)).

determined by TIAA. *All proof must be satisfactory to TIAA.*

TIAA may require as part of the proof of [d]isability: statements of treating physicians; copies of test reports or examinations; x-rays; hospital records; medical examinations by impartial specialists at TIAA's expense; investigations conducted by TIAA or outside agencies. . . .

Plan, at § 7.1 (emphasis added) (included in Def. Notice of Motion at Ex. A).

■ In cases where the Second Circuit has applied the more deferential arbitrary and capricious standard, it has required that the policy language reserving discretion be clear and unambiguous. *See Kinstler,* 181 F.3d at 251 (citing *Ganton Techs., Inc. v. National Indus. Group Pension Plan,* 76 F.3d 462, 466 (2d Cir. 1996) (explicit provision in the policy which provided that the trustees had authority to "resolve all disputes and ambiguities relating to the interpretation of the Plan, and the application of the terms of the Plan to any circumstances and the decisions of the Board in all such matters will be final."); *Zuckerbrod v. Phoenix Mut. Life Ins. Co.,* 78 F.3d 46, 48 (2d Cir.1996) (policy provided that plaintiff was entitled to benefits if the plan administrators "determined that such . . . care was essential, in our judgment, for the treatment of [plaintiff's] [i]njury or sickness.")); *see also Pagan,* 52 F.3d at 441 (plan provided that "the . . . Committee shall determine conclusively for all parties all questions arising in the administration of the [Pension] Plan and any decision of such Committee shall not be subject to further review."); *cf. Masella v. Blue Cross & Blue Shield of Connecticut, Inc.,* 936 F.2d 98, 103 (2d Cir.1991) (applying *de novo* standard of review where provision stated that the plan is "subject to the terms and conditions of a basic medical/surgical program which is acceptable to the Corporation, in its sole discretion."). Here, however, defendant cites to language in the Plan which is less explicit in the grant of discretion afforded

to the plan administrator. Specifically, defendant relies on the provision of the Plan which states that "[a]ll proof [of claimant's disability] must be satisfactory to TIAA." Plan, at § 7.1; *see also* Def.Mem. of Law at 7.

■ In *Kinstler,* the Second Circuit addressed the issue of whether the phrase "satisfactory proof" conveyed discretionary authority under a plan sufficient to preclude a *de novo* review:

[T]he word "satisfactory," whether in the phrase "satisfactory proof" or the phrase "proof satisfactory to [the decision-maker]" is an inadequate way to convey the idea that a plan administrator has discretion. Every plan that is administered requires submission of proof that will "satisfy" the administrator. No plan provides benefits when the administrator thinks that benefits should not be paid! Thus, saying that proof must be satisfactory "to the administrator" merely states the obvious point that the administrator is the decision-maker, at least in the first instance. Though we reiterate that no one word or phrase must always be used to confer discretionary authority, the administrator's burden to demonstrate insulation from de novo review requires either language stating that the award of benefits is within the discretion of the plan administrator or language that is plainly the functional equivalent of such wording. Since clear language can be readily drafted and included in policies, even in the context of collectively bargained benefit plans when the parties really intend to subject claim denials to judicial review under a deferential standard, courts should require clear language and decline to search in semantic swamps for arguable grants of discretion.

181 F.3d at 252.

Similar to *Kinstler,* the Court finds that the key language cited by the defendant requiring "satisfactory proof" is insufficient to reserve in TIAA the discretionary

authority necessary to invoke the arbitrary and capricious standard of review. Accordingly, the Court will apply a *de novo* standard in determining whether defendant's decision to discontinue plaintiff's disability benefits under the Plan was correct and reasonable. *See Moriarity v. United Tech. Corp. Represented Employees Retirement Plan*, 158 F.3d 157, 158 (2d Cir.1998) (per curiam) ("We affirm because we conclude that even under a de novo standard of review, the Committee's reading of the [plan] was the only reasonable and correct one."); *Ludwig v. NYNEX Serv. Co.*, 838 F.Supp. 769, 785 (S.D.N.Y. 1993).

## C. Scope of *De Novo* Review

The Court must now determine the scope of its *de novo* review of defendant's denial of benefits. Specifically, the Court must determine whether its review is limited to the administrative record, or, whether plaintiff should be permitted to introduce evidence beyond the administrative record with respect to factual issues underlying defendant's decision to discontinue her disability benefits.

In addressing this issue, the Second Circuit has stated that the decision whether to admit additional evidence rests within the discretion of the district court, and that discretion should not be exercised "in the absence of good cause." *DeFelice v. American Int'l Life Assurance Co. of New York*, 112 F.3d 61, 66 (2d Cir.1997) (finding "good cause" existed where appeals committee which reviewed plaintiff's claim "was comprised entirely of [defendant's] employees"). Recognizing that a conflict of interest scenario is one example of "good cause" permitting the district court to consider evidence outside the administrative record, the *DeFelice* Court held that:

[W]here the district court reviews an administrative decision under a plan that does not grant such discretion, the review is de novo and is limited to the record in front of the claims administra-

tor *unless the district court finds good cause to consider additional evidence.* A demonstrated conflict of interest in the administrative reviewing body is an example of "good cause" warranting the introduction of additional evidence.

*Id.* at 66–67 (emphasis added).

Plaintiff, however, fails to allege, with any specificity, whether "good cause" exists sufficient to permit the introduction of additional evidence; rather, plaintiff broadly requests that she be able offer testimony from her treating physicians and other medical personnel involved in her medical care. Specifically, plaintiff argues that:

There are issues of fact which must be decided and witnesses who should be allowed to explain their opinions. Certainly, in fairness, the evidence at trial would be limited to the time frame covered by the administrative record, but the Court should expand its inquiry beyond a sterile review of the documentary record.

Pl. Opp'n to Motion for Summ. J., at 4.

While the Court is mindful that where a party demonstrates "good cause" a court may exercise its discretion and consider evidence beyond the administrative record, such discretion should not be exercised in cases where a party fails to demonstrate, beyond mere speculation or conjecture, that the "administrative record is inadequate to conduct a proper review of the administrative decision." *DeFelice*, 112 F.3d at 65 (citing *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir.1993)). In addition to failing to demonstrate "good cause," plaintiff overlooks the fact that some of the additional evidence that she requests the Court consider—testimony from physicians and medical personnel who examined her—is already well documented in the administrative record before the Court. The Court, therefore, declines plaintiff's invitation "that the door be opened to whatever new evidence might be developed." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1091 (9th Cir.1999) (en

banc); *see also Conley v. Pitney Bowes,* 176 F.3d 1044, 1049 (8th Cir.1999) (holding that absent good cause, "a court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider post hoc rationales."). Accordingly, the Court will limit its *de novo* review to the administrative record.

### D. The Merits of Hotaling's Claim

Having determined the appropriate standard and scope of review to be applied, the Court now turns to the merits of plaintiff's claim that she was improperly denied disability benefits under the Plan. Central to that claim is the definition of "disability" under the Plan:

Disability or disabled is defined, in relevant part, as:

(1)(a) for the first thirty months of Disability, being completely unable due to sickness, bodily injury, or pregnancy to perform your normal occupation and not performing any other occupation; and

(b) after the first thirty months, being unable due to sickness, bodily injury, or pregnancy to perform any occupation for which you are reasonably suited by education, training, or experience. . . .

Plan, at § 8.1 (included in Def. Notice of Motion at Ex. A).

Defendant contends that the objective medical evidence demonstrates that plaintiff was not disabled as defined under the Plan. Defendant principally relies on plaintiff's Functional Capacity Evaluation and reports from plaintiff's treating physicians which determined that plaintiff could return to work, but required periodic rest breaks to alleviate pain brought on by sitting at her desk for extended periods of time. In addressing Dr. Del Giacco's second opinion, which opined that plaintiff was unable to return to work, defendant contends that Dr. Del Giacco relied solely on plaintiff's subjective complaints regard-

ing her symptoms rather than objective medical evidence to challenge the results of plaintiff's Functional Capacity Evaluation. *See* Def.Mem. of Law at 9. In response, plaintiff relies on Dr. Del Giacco's opinion and results of an MRI conducted in 1996 in arguing that "[t]he administrative record is replete with documentation to support Mrs. Hotaling's application for long term disability benefits." Pl. Opp'n to Motion for Summ. J., at 4.

Plaintiff does not challenge defendant's contention that "disability," as defined under the Plan, requires that an employee be *"completely unable* . . . to perform [her] normal occupation." Plan, at § 8.1 (emphasis added). Thus, the Court is not faced with an issue of plan interpretation; rather, the Court's review is limited to factual determinations underlying TIAA's denial of Hotaling's claim for disability benefits.

 Based on a *de novo* review of the administrative record, the Court finds that defendant properly denied plaintiff's claim for disability benefits under the Plan. First, plaintiff's Functional Capacity Evaluation determined that Hotaling was able to perform at the "light" level, but could not sustain that level over an eight-hour work day. As defined in the Functional Capacity Evaluation, the "light" level classification placed plaintiff above the "sedentary" level. Significantly, plaintiff's position as Director of Student Loans and Internal Collections at Hartwick College was sedentary in nature and primarily involved working at her desk. Second, plaintiff's treating physicians, Drs. Del Giacco and Elting, both initially agreed with the results of the Functional Capacity Evaluation. *See* Administrative Record, at 139, 148, 152. Specifically, Dr. Del Giacco initially opined that Hotaling was able to return to work part-time, and "should be able to work an eight-hour day of desk work with the usual breaks for stretching afforded to any employee." *Id.* at 148. Dr. Elting agreed with the "light" level assessment, but noted that "there is a gulf

between what [plaintiff] *can* do and what she *will* do." *Id.* at 152 (emphasis in original). Finally, Ms. Buzzell, the physical therapist who performed the Functional Capacity Evaluation, reported that "Ms. Hotaling can work 4 hours a day, and after a month, increasing each week by an additional hour until she reaches 8 hours a day." *Id.* at 157. Thus, based on plaintiff's Functional Capacity Evaluation and results of medical examinations conducted since July 1996—when plaintiff first sought treatment for her condition—there was initial agreement amongst Hotaling's treating physicians and physical therapist that she was able to return to work on a part-time basis. Thus, under the plain language of the Plan relied on by the parties, Hotaling's ability to perform at the "light" level and work on a part-time basis would not qualify her as "disabled" and, therefore, Hotaling was not eligible to receive disability benefits.

In July 1997, approximately one month after concurring with the findings of plaintiff's Functional Capacity Evaluation and recommending that Hotaling was able to return to work part-time, Dr. Del Giacco stated that Hotaling was now not able "to perform a job which require[d] prolonged sitting." Administrative Record at 150. Significantly, Dr. Del Giacco stated that his disagreement with the Functional Capacity Evaluation was not based on objective medical evidence; rather, it was based on Hotaling's subjective complaints regarding her condition. *See id.* at 161. Although the Court is sensitive to Hotaling's condition, her subjective complaints, to the extent relevant, are against the overwhelming weight of the objective medical evidence contained in the administrative record. Thus, plaintiff fails to demonstrate, with any specificity, a triable issue of fact sufficient to preclude summary judgment. Accordingly, the Court finds that, based on a *de novo* review of

the record, TIAA's decision to discontinue Hotaling's disability benefits was proper.[7]

## III. CONCLUSION:

For all of the foregoing reasons, defendant's motion for summary judgment is **GRANTED**, dismissing plaintiff's Amended Complaint in its entirety.

**IT IS SO ORDERED.**

---

7. Because the Court grants defendant's motion for summary judgment, it need not reach the merits of defendant's *in limine* requests.