Michael J. MULLALY, Plaintiff,

v.

FIRST RELIANCE STANDARD LIFE
INSURANCE COMPANY,
Defendant.

No. CIV.A.3:01–CV–729 (J).

United States District Court,
D. Connecticut.

March 24, 2003.

Patrick Tomasiewicz, Fazzano, Tomasiewicz & Pulding, West Hartdord, CT, for Plaintiff.

Gary N. Stewart, Macioci, Fisher & Stewart, Newport, RI, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 24]

HALL, District Judge.

The plaintiff, Michael J. Mullaly ("Mullaly"), brings this action under the Employment Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1101 et seq., against First Reliance Standard Life Insurance Company ("First Reliance"). Mullaly claims that First Reliance wrongfully terminated disability benefits to which he was entitled under an employee welfare benefit plan.

First Reliance seeks summary judgment on all claims against it. More specifically, First Reliance asserts that it terminated Mullaly's benefits because a functional capacity exam ("FCE") indicated that he was no longer totally disabled under the policy. Mullaly claims that First Reliance's interpretation of the policy terms is unreasonable, and that First Reliance should provide rehabilitative benefits to him because he is only able to work part-time. For the reasons set forth below, defendant's motion for summary judgment is granted.

## I. FACTUAL BACKGROUND

Michael Mullaly served as a shipping clerk for Charles Freihofer Baking Company, Inc. ("Freihofer") from 1987 until 1992. Mullaly's compensation package with Freihofer included long term disability insurance coverage pursuant to a group policy issued by First Reliance.

On August 8, 1990, Mullaly was involved in a car accident. He suffered severe injuries to his back and neck. Throughout the next two years, Mullaly periodically was completely unable to work, worked subject to light duty work restrictions, and performed his full duties. In March of 1992, Mullaly's condition had worsened, and his physicians determined that it was unlikely Mullaly would ever be able to fully perform his duties at the bakery. Mullaly applied for benefits under Freihofer's long term disability policy, and was found eligible to receive them as of August 25, 1992. First Reliance began paying Mullaly monthly benefits under the plan on September 4, 1992.

Freihofer's disability policy provides for benefits upon a finding of "Total Disability." Policy, Exh. 2 to Pl's Memo. of Law in Supp. of Opp. to Def.'s Mot. for Summ. J. [Dkt. No. 30], at 7.0. In the first sixty months for which a monthly benefit is payable, an insured is "Totally Disabled" if he or she either "cannot perform the material duties of his/her regular occupation" or "is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis." Policy at 2.1. After a monthly benefit has been paid for sixty months, an insured is "Totally Disabled" if he or she "cannot perform the material duties of any occupation. Any occupation is one that the In-

sured's education, training or experience will reasonably allow." *Id.* An insured's monthly benefit will terminate on "the date the Insured ceased to be Totally Disabled" or "the date the Insured fails to furnish the required proof of Total Disability." *Id.* at 7.1.

First Reliance did not dispute that Mullaly was unable to perform his previous job as a shipping clerk, and was therefore entitled to benefits for the first sixty months of his disability. After that sixty-month period, which terminated in 1997, First Reliance initiated an investigation to determine whether Mullaly was able to perform the material duties of any occupation. First Reliance requested, and Mullaly consented to, an FCE, which was performed on March 10, 2000. Mullaly claims that Alexander Peaker, a claims analyst supervisor at First Reliance, informed him that, were the FCE to establish that Mullaly could perform some occupation in which Mullaly would earn less than his monthly benefit, First Reliance would make up the difference between Mullaly's earnings and the amount of his monthly benefit.

As a result of the FCE, First Reliance identified six occupations suitable for Mullaly's physical condition. The occupations were: (1) dispatcher, maintenance service, (2) surveillance system monitor, (3) identification clerk, (4) information clerk, (5) telephone solicitor, and (6) answering service operator. On May 11, 2000, Mullaly's physician confirmed that Mullaly had the physical capacity to perform the duties associated with those occupations. Based on this evaluation, First Reliance completely terminated Mullaly's benefits on July 18, 2000. Following First Reliance's termination of benefits, Mullaly's physician clarified his assessment of Mullaly's physical condition via letter, which indicated that Mullaly could not work any more than

six hours per day. In August of 2000, Mullaly sought and obtained employment as a part-time counterperson at Riverdale Cleaners in Cromwell, Connecticut, where he continues to work.

## II. SUMMARY JUDGMENT STANDARD

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). The burden of showing that no genuine factual dispute exists rests upon the moving party. *Marvel Characters Inc.*, 310 F.3d at 286. Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505, and present such evidence that would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 253 (2d Cir. 2002). "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the moving party." *Lucente*, 310 F.3d at 254. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *Sologub*

*v. City of New York,* 202 F.3d 175, 178 (2d Cir.2000).

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in original). The substantive law of the claim governs materiality, as "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505.

## III. DISCUSSION

### A. Standard of Review

There is no dispute that the Plan is an "employee welfare benefit plan" governed by ERISA. *See* 29 U.S.C. § 1002(1). As such, Mullaly's action for wrongful termination of long term disability benefits is a claim under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).

When evaluating a challenge to denial of benefits under an ERISA plan, a court must first determine whether the Plan confers discretionary authority on the Plan's Administrator. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). "When an employee benefit plan grants a plan fiduciary discretionary authority to construe the terms of the plan, [t]he court may reverse only if the fiduciary's decision was arbitrary and capricious." *Rombach*

*v. Nestle USA. Inc.,* 211 F.3d 190, 194 (2d Cir.2000) (quoting *Miller v. United Welfare Fund,* 72 F.3d 1066, 1070 (2d Cir. 1995)) (internal quotation marks omitted). "The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies, since 'the party claiming deferential review should prove the predicate that justifies it.'" *Kinstler v. First Reliance Standard Life Ins. Co.,* 181 F.3d 243, 249 (2d Cir.1999) (quoting *Sharkey v. Ultramar Energy Ltd.,* 70 F.3d 226, 230 (2d Cir.1995)).

First Reliance concedes that the Second Circuit's ruling in *Kinstler v. First Reliance, supra,* established that First Reliance's standard disability policy, which is at issue in this case, does not confer upon First Reliance discretionary authority to construe its terms. Def's Memo. of Law in Supp. of Mot. for Summ. J. at 8. Because the defendant does not claim that the arbitrary and capricious standard of review applies, the court will review First Reliance's denial of Mullaly's benefits *de novo.*

In conducting such review, the court will construe the terms of an ERISA plan according to federal common law. *Fay v. Oxford Health Plan,* 287 F.3d 96, 104 (2d Cir.2002). The court should "review the Plan as a whole, giving terms their plain meanings. Where there are ambiguities in an ERISA plan that this Court is reviewing de novo, those ambiguities are construed in favor of the plan beneficiary." *Id.* (internal citations omitted). Whether contract language is ambiguous, that is, "subject to more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire ... agreement," "is a question of law that is resolved by reference to the contract alone." *Id.* (citing *O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc.,* 37 F.3d 55, 59 (2d Cir.1994)). Because ambi-

guities are resolved in the insured's favor, a loss of benefits will only be upheld if the plan includes a statement of the "circumstances which may result in disqualification, ineligibility or denial [or] loss of benefits." *Kosakow v. New Rochelle Radiology Associates, P.C.,* 274 F.3d 706, 738 (2d Cir.2001).

## B. Mullaly's Entitlement to Disability Benefits under the Policy

■ Mullaly claims that he is entitled to a payment of partial benefits under the policy's Rehabilitation Provision.[1] He argues that he is entitled to these benefits because he has not, and argues is not able to, return to full-time employment. Because his monthly earnings at his current job are less than his monthly benefit under the policy, Mullaly argues he is entitled to some compensation from First Reliance to fill that gap.

The policy's Rehabilitation Provision states that, "[i]f, during a period of Total Disability for which a Monthly Benefit is payable, an Insured accepts Rehabilitative Employment, we will continue to pay the Monthly Benefit less 50% of any of the money received from this Rehabilitative Employment." Policy at 7.1. "Rehabilitative Employment" is defined as

work in any gainful occupation for which the Insured's training, education or experience will reasonably allow. The work must be supervised by a Physician or a licensed rehabilitation specialist approved by us. Rehabilitative Employment does not include performing all the material duties of his/her regular occupation on a Full-time basis.

Policy at 2.0.

Implicit in Mullaly's argument is the assertion that he is still totally disabled under the policy, and therefore eligible for benefits, because he is only able to perform the material duties of his occupation as a counterperson on a part-time basis. However, the definition of "Totally Disabled" that applies after sixty months of eligibility, unlike that applicable to the first sixty months, does not differentiate between part-time and full-time work. The definition applicable to the first sixty months of eligibility provides that an insured is "Totally Disabled" if he is capable of "only performing the material duties [of his regular occupation] on a part-time basis," the definition applicable after sixty months does not make this distinction. An insured is "Totally Disabled" under the latter definition if he "cannot perform the material duties of any occupation ... that the Insured's education, training or experience will reasonably allow." Policy at 2.1. Therefore, even if Mullaly's physical limitations allow only part-time work, the text of the policy does not support the conclusion that the inability to work full-time renders a person "Totally Disabled" after the first sixty months of eligibility.

■ This court's interpretation of the policy's "Total Disability" provision is consistent with the weight of authority in other jurisdictions. In the absence of clear language permitting part-time employment, courts have uniformly declined to consider a claimant, who is capable of working part-time, eligible for benefits under a general disability policy. *See, e.g., Doyle v. Paul Revere Life Ins. Co.,* 144 F.3d 181, 186 (1st Cir.1998) (claimant who was able to perform sedentary work on part-time basis was not "totally disabled

---

1. Mullaly's Second Amended Complaint included a claim for reinstatement of his full monthly disability benefit, but he abandoned that claim in his opposition to defendant's motion for summary judgment. Pl's Memo. of Law in Supp. of his Opp. to Def.'s Mot. for Summ. J. [Dkt. No. 30] at 11.

from any occupation"); *Ladd v. ITT Corp.*, 148 F.3d 753, 754 (7th Cir.1998) (claimant who was able to work part-time not totally disabled under policy requiring her to be "unable to engage in any and every duty pertaining to any occupation or employment for wage for which you are qualified"); *Billinger v. Bell Atlantic*, 240 F.Supp.2d 274, 283–84 (S.D.N.Y.2003) (claimant not unable to engage "in any occupation or employment for which the employee is qualified, or may reasonably become qualified, based on training, education or experience" where capable of performing sedentary work on a part-time basis); *Hotaling v. Teachers Ins. and Annuity Association of America*, 62 F.Supp.2d 731, 739–40 (N.D.N.Y.1999) (claimant able to perform light work on a part-time basis was not "completely unable ... to perform [her] normal occupation"); *Cini v. Paul Revere Life Ins. Co.*, 50 F.Supp.2d 419, 421, 425 (E.D.Pa.1999) (claimant not "totally disabled from [his] occupation" where able to resume occupational duties on a part-time basis).

Further undermining Mullaly's position that he is entitled to rehabilitative benefits is the text of the Rehabilitation Provision itself. This provision, read in conjunction with the definition of "Total Disability" that applies after sixty months of benefits are paid, indicates that it is not possible for an individual to be "Totally Disabled" after sixty months of eligibility and also to be engaged in "Rehabilitative Employment." The definition of "Totally Disabled" after the first sixty months of eligibility tracks the definition of "Rehabilitative Employment" word for word. "Rehabilitative Employment" is "work in any gainful occupation for which the Insured's training, education or experience will reasonably allow." Policy at 2.0. To be "Totally Disabled," the insured must *not* be able to "perform the material duties of any occupation ... that the Insured's education, training or experience will reasonably allow." Policy at 2.1. Analyzing these two provisions together, it is apparent that, if an individual is able to engage in "Rehabilitative Employment" after sixty months of eligibility, he is, by definition, not "Totally Disabled" under the policy.

■ Even if Mullaly were "Totally Disabled" under the policy, its terms, read as a whole, indicate that the Rehabilitation Provision only applies to work performed for the policyholder, in this case, Freihofer. The court reaches this conclusion through an analysis of the provisions governing "Other Income Benefits" and rehabilitative employment. The benefit provisions specify that the claimant's monthly benefit will be reduced by the amount of "Other Income Benefits." Policy at 7.0. These Other Income Benefits include "wages, excluding the amount allowable under the Rehabilitation Provision" "that the Insured is entitled to receive from you." *Id.* "You" in the policy is a clear reference to Freihofer, the policyholder, and does not refer to other employers not insured by the policy.

The Rehabilitation Provision must be read in conjunction with this benefit provision. Were the Rehabilitation Provision to apply in the absence of an accompanying provision for benefit reduction, it would make little sense. The Rehabilitation Provision, which states that "during a period of Total Disability," First Reliance will pay a claimant his monthly benefit "less 50% of any of the money received from this Rehabilitative Employment," clearly contemplates that benefits, to which a Totally Disabled claimant would be entitled if he did not work, will be reduced by the amount of wages earned. Policy at 7.1. If benefits were *not* reduced by the amount

of wages earned, the Rehabilitation Provision, which is clearly designed to encourage a disabled claimant to rehabilitate himself by returning to gainful employment, would work to a claimant's disadvantage. Under this scenario, a claimant who obtained "Rehabilitative Employment" would be subject to a benefit reduction equal to 50% of his wages, but a claimant who obtained employment with no rehabilitative potential would not be subject to any reduction in benefits whatsoever. It is unlikely the parties intended such an odd result, and the court will not interpret the contract to provide it. *See Rothenberg v. Lincoln Farm Camp. Inc.*, 755 F.2d 1017, 1019 (2d Cir.1985) ("an interpretation that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect").

Mullaly does not advance this unreasonable result, but rather argues that the policy should be interpreted to treat his employment at Riverdale Cleaners identically to any work he might obtain at Freihofer. Mullaly's position, however, finds no support in the plain language of the contract. As discussed above, the clause governing "Other Income Benefits" only provides for a reduction in benefits, subject to the Rehabilitation Provision, for wages paid by the policyholder, Freihofer. Therefore, the Rehabilitation Provision and the provision governing Other Income Benefits, when read together, indicate that Mullaly, who is not employed by Freihofer, is not engaged in "Rehabilitative Employment."

For these reasons, the court concludes that, because Mullaly was capable of performing part-time work, he was not "Totally Disabled" under the policy at the time his benefits were terminated on July 18, 2000. In addition, even if he were "Totally Disabled" under the policy, Mullaly's work

at Riverdale Cleaners is not "Rehabilitative Employment" under the policy. Therefore, First Reliance's termination of Mullaly's benefits was proper.

## C. Oral Representations by Employees of First Reliance

Mullaly argues that, even if the court does not find that the policy allows for a payment of benefits to him, promissory estoppel should prevent First Reliance from terminating those benefits. In support of this claim, Mullaly argues that he only submitted to the FCE because Mr. Peaker and other representatives of First Reliance informed him that he would continue to receive benefits even if it was determined he was able to work part-time.

Under Second Circuit case law, promissory estoppel in ERISA cases requires satisfaction of four elements: " '(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced.' " *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir. 1999) (quoting *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 79 (2d Cir. 1996)). In addition to these four elements, an ERISA plaintiff must " 'adduce ... facts sufficient to satisfy an extraordinary circumstances requirement as well.' " *Id.* (quoting *Devlin v. Transportation Communications Int'l Union*, 173 F.3d 94, 102 (2d Cir.1999)).

Mullaly has not established that a material issue of fact exists with respect to the third element above, injury caused by the reliance. Though Mullaly claims that he would not have submitted to the FCE if he had known his benefits would be terminated, he has no right to refuse the exam under the policy. The policy provides that First Reliance "will, a our expense, have the right to have a Claimant interviewed and/or examined ... physically ... to de-

termine the existence of any Total Disability which is the basis for a claim. This right may be used as often as it is reasonably required while a claim is pending." Policy at 4.0. Because Mullaly was required to submit to an FCE under the policy, whether or not Mr. Peaker's alleged misrepresentations induced him to do so is immaterial.

## IV. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment [Dkt. No. 24] is GRANTED as to all claims asserted in plaintiff's complaint. The clerk is ordered to close this case.

**SO ORDERED**.