

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-28-2002

# Marx v. Meridian Bancorp

Precedential or Non-Precedential:

Docket 01-2918

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Marx v. Meridian Bancorp" (2002). *2002 Decisions*. Paper 223.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/223

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 01-2918
_____

LOIS E. MARX,

                                                          Appellant

v.

MERIDIAN BANCORP, INC. , LONG TERM DISABILITY PLAN; JOHN DOES 1-10
IN THEIR CAPACITIES AS MEMBERS OF THE ADMINISTRATIVE COMMITTEE
ON EMPLOYEE BENEFIT PLANS (A.K.A. THE BENEFITS DESIGN
COMMITTEE); METROPOLITAN LIFE INSURANCE COMPANY; CORESTATES
FINANCIAL CORPORATION

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 99-CV-4484)
District Judge:  The Honorable Ronald L. Buckwalter
_____

Argued, Tuesday, February 26th, 2002

Before: ROTH, FUENTES and GIBSON*, Circuit Judges

(Opinion Filed: March 27, 2002)

_____


                              Ronald H. Surkin (argued)
              Margo L. Buckles
              Gallagher, Schoenfeld, Surkin & Chupein, P.C.
              25 West Second Street
                              Media, Pennsylvania 19063-0900
                   Attorneys for Appellant


                              E. Thomas Henefer
              Stevens & Lee
              111 North Sixth Street
              Reading, Pennsylvania 19603
                              Attorney for Appellees


_____


OPINION OF THE COURT
_____


FUENTES, Circuit Judge:
      Lois Marx appeals the District Court's decision to grant the Defendants' summary
judgement motion, in opposition to Marx's suit for long-term disability benefits under the
Employee Retirement Income Security Act of 1974 ("ERISA"). For the reasons stated
below, we will affirm.
      Lois Marx began working as a secretary for Meridian Bancorp, Inc. ("Meridian")
_____

* The Honorable John R. Gibson, United States Circuit Judge for the Eight Circuit, sitting by designation.

in 1991. In January 1995, Marx requested a leave of absence on account of back pain which she claimed affected her ability to sit or stand for extensive periods of time. With the support of her treating physician, Dr. Mark Kender, Marx filed a claim for long-term disability ("LTD") benefits with Defendants under the Meridian Bancorp, Inc. Long-Term Disability Plan (the "Plan"), alleging an inability to work on account of the pain and the depression it caused her.

The LTD Plan is an ERISA-regulated employee welfare benefit plan established by Meridian. Under the Plan, the Administrative Services Committee of Meridian has been designated as the "Plan Administrator," and is responsible for the day-to-day operation and management of the Plan. See, Meridian Bancorp Long Term Disability Plan, Art. I, 1.24.. Significantly, Meridian had entered into an Administrative Services Agreement (the "Agreement") with Metropolitan Life Insurance Co. ("MetLife") to carry out many of its responsibilities under the Plan. Generally, as the "Claim Administrator," MetLife was required to provide "claim adjudication services at the direction of the Plan Administrator." Id., at 1.06.

To establish a claim for LTD under the Plan, a claimant must show that she is unable to perform the duties of her own job. See, the Plan 1.32 (defining a Participant's 'total disability' as being "unable to engage in the material and substantial duties of his or her Regular Occupation immediately prior to the Date of Disability."). If a claimant can establish disability under this standard, she may receive benefits during a two year "Waiting Period." After the Waiting Period, a claimant's eligibility is assessed under a more stringent standard, one which requires her to demonstrate that she is unable "to perform any occupation" for which she "is qualified or may reasonably become qualified by training, education or experience." 1.32 & 1.03 of the Plan (defining 'Total Disability' and 'Any Occupation,' respectively).

Marx succeeded in her claim to receive LTD benefits under the initial standard and received benefits for the two year Waiting Period. During that time, Marx consulted other doctors, underwent surgery for her back and took steps to establish a claim for permanent disability benefits. For instance, she submitted medical records to the Plan Administrator, received an independent medical examination and filed for Social Security Disability Income ("SSDI"), all in accordance with the Plan's requirements.

At the end of the Waiting Period, Defendants reevaluated Marx's eligibility under the more stringent standard of review and denied Marx's benefits. Marx appealed this determination and argued that SSA's 1996 finding of total disability should have resulted automatically in the same decision by Defendants. Marx also criticized the behavior of Dr. O'Brien, the independent medical examiner and hence questioned the credibility of his findings. Despite these arguments, Defendants upheld their decision on appeal.

On July 16, 1998, Marx, now represented by counsel, sought a third review of her claim. Marx again argued that the SSA's findings should have been conclusive. The Claim Administrators, Metropolitan Life Insurance Company ("MetLife"), informed Marx that she could submit additional medical evidence and Marx followed this suggestion. However, on September 23, 1998, MetLife informed Marx that it would not re-open her case.

On September 8, 1999, Marx filed a claim with the U.S. District Court for the Eastern District of Pennsylvania under ERISA. See, 29 USC 1132(a)(1)(B) (authorizing, inter alia, suits by a participant or beneficiary in an approved plan "to recover benefits due to him under the terms of his plan"). After the completion of discovery, Defendants filed for summary judgment.

On June 20, 2001, the District Court granted the Defendant's summary judgment motion. See, Marx v. Meridian, 2001 WL 706280. The Court first determined that the appropriate standard for reviewing MetLife's denial of Marx' LTD benefits was a deferential 'arbitrary and capricious' standard. Id. at *2.

The Court next applied the Arbitrary and Capricious standard to Marx' substantive claims. Regarding Marx' claim that MetLife had denied her LTD benefits on the basis of an incomplete medical file, the District Court found that "temporal discrepancies" between the letters actually submitted by MetLife and Marx' claims in her affidavit about which letters were missing "[led] the Court to question the integrity of Plaintiff's

affidavit." The Court therefore found that "in the absence of any evidence other than Plaintiff's assertions that she submitted these materials, the Court does not find that this issue is sufficient to preclude a grant of summary judgment in favor of Defendants." Marx, 2001 WL, at *4.

The Court next addressed Marx' claim that the decision of the Social Security Administration to grant Marx SSDI benefits mandated a parallel finding by MetLife with regard to Marx' LTD benefits. The Court determined that, according to the Plan, an SSA finding is only one factor among many that may be considered when granting disability benefits and would not mandate receipt of LTD benefits. Id. at *5.

Finally, the Court considered Marx' claim that the decision of the independent medical examiner, Dr. O'Brien, that Marx was not totally disabled, was unfounded. The Court first observed that Marx' claim only referenced the standard medical check-box questionnaire filled out by the doctor, but ignored the four-page, single-spaced analysis of Marx' condition submitted by Dr. O'Brien. The Court also noted Dr. O'Brien's comment that, during the examination, Marx was "uncooperative and recalcitrant." The Court concluded that "in light of [Marx'] behavior, the fact that Dr. O'Brien's conclusions are supported by other evidence in the record and the fact that the Court places more significance on Dr. O'Brien's discussion than on the checkmarks on a form, the Court finds that MetLife's reliance on Dr. O'Brien's analysis does not render MetLife's decision arbitrary and capricious. " Id. The Court accordingly granted summary judgement and dismissed Marx' claim.

On July 18, 2001, Marx timely filed for appellate review with this court.

Our review of a District Court's decision to grant summary judgement is plenary. Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of America, Inc., 222 F.3d 123, 128-29 (3d Cir. 2000). Therefore, like the District Court, this Court must consider the evidence in the record in the light most favorable to the nonmoving party, See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986). Additionally, we may grant summary judgment only where the moving party has established that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. However, we may affirm the summary judgment decision of the District Court if it could have been reached on any ground below, including grounds rejected or not reached by the District Court. University of Maryland v. Peat Marwick Main & Co., 923 F.2d 265 (3d Cir. 1991).

After a careful review of the briefs and appendices submitted by the parties, we find no basis for disturbing the District Court's rulings on Marx' substantive claims. We write only to address Marx initial claim on appeal: that the District Court erred in making its threshold determination, when it decided to use a deferential arbitrary and capricious standard, rather than reviewing MetLife's denial of Marx's application for LTD benefits de novo. We exercise plenary review of the standard applied by the District Court. See, Gritzer v. CBS Inc., 275 F.3d 291, 295 (3d Cir. 2002).

ERISA explicitly authorizes suits by a participant or beneficiary "to recover benefits due to [her] under the terms of his plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan" See, 29 USC 1132(a)(1)(B). However, ERISA does not set out the standard of review for an action brought by a plan participant under 1132(a)(1)(B). See, Mitchell v. Eastman Kodak Co., 113 F.3d 433 (3d Cir 1997). Nevertheless, the Supreme Court has addressed the question of the appropriate standard for actions challenging "denials of benefits based on plan interpretations." See, Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989). In Firestone, the Court held that "a denial of benefits challenged under 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id., at 115 [emphasis added]. This Court subsequently held that where de novo review is inappropriate, an arbitrary and capricious standard should be applied in evaluating a claim against a plan administrator for denial of benefits. See, Stoetzner v. U.S. Steel Corp., 897 F2d 115, 119 (3d Cir. 1990); See also, Firestone, 489 US at 114 ("[w]here the plan affords the administrator discretionary authority, the administrator's interpretation of the plan will not be disturbed if reasonable.") [emphasis added]. Therefore, we must determine whether the Plan granted discretionary authority to MetLife to determine Marx' eligibility for LTD benefits.

To determine the proper standard of review, we must begin with the language of

the plan.   See, Luby v. Teamsters Health, Welfare & Pension Trust Funds, 944 F.2d 1176, 1180 (3d Cir. 1991) (instructing that "[w]hether a plan administrator's exercise of power is mandatory or discretionary depends upon the terms of the plan," and that "the terms of the plan are construed without deferring to either party's interpretation."); See also, Firestone, 489 US at 115 ("the validity of a claim is likely to turn on the interpretation of terms in the plan at issue"). The District Court below examined the language of Meridian's LTD Plan and found that the Plan "does not contain an [explicit] grant of authority to MetLife."Marx v. Meridian, 2001 WL 706280, at *3.  Nevertheless, under ERISA, the discretion required to trigger the deferential arbitrary and capricious standard of review need not be expressly stated in the plan, but can be implied from its terms. See, Luby, 944 F.2d at 1180, quoting, Nobel v. Vitro Corp., 1180, 1187 (4th Cir. 1989) (no "magic words," such as "discretion is granted ...," need be expressly stated in order for the plan to accord the administrator discretion to interpret plan terms and to hear and decide disputes between persons alleging themselves to be beneficiaries, so long as the plan on its face clearly grants such discretion). Accordingly, the District Court found that certain provisions of the Plan, "taken together with the structure of MetLife's responsibilities,...suggest an almost unavoidable grant of [implicit] discretionary authority by Meridian to MetLife," and therefore reviewed MetLife's conclusions under an arbitrary and capricious standard.  Id.  At oral argument, counsel for Meridian relied on one specific provision in asserting that the terms of the Plan make it clear on its face that Meridian had granted discretion to MetLife to determine eligibility for the Plan's participants. See, the Plan,  6.04(j) ("Upon request for review [of a denial of benefits] the Plan Administrator will arrange and supervise a full review of the claim by the Claims Administrator [MetLife], whose decision after such a review shall be final.") [emphasis added].

    At oral argument, counsel for Marx admitted that the provisions of the Plan (and specifically  6.04(j)) grant some discretion to MetLife to determine a Participant's eligibility for LTD benefits. However, he argued that MetLife's decision denying Marx' LTD benefits must be reviewed de novo because MetLife had not been specifically designated an "ERISA fiduciary" under the Plan, and only an "ERISA fiduciary" is entitled to the deferential standard of review. See, the Agreement, Article I (stating that "in the discharge of its obligations under this Agreement, MetLife acts solely as an agent of Meridian...and not as a fiduciary as that term is defined under [ERISA])."  In addition, he cited a single piece of correspondence between Meridian and MetLife regarding a previous claimant's application for LTD  benefits as demonstrating an "undeniable course of dealing" between the two companies that clearly indicates that Meridian, and not MetLife, had ultimate authority over decisions to deny Plan benefits. See, II Appendix 409, Letter from MetLife to Meridian ("We have completed a review of Ms. Williams LTD claim [and MetLife therefore] recommend[s] termination of benefits. As claims fiduciary, you [Meridian] must inform the claimant of your final decision in this matter.")

    However, there is no requirement in the jurisprudence of either the Supreme Court or this Court that limits the deferential standard of review to ERISA fiduciaries. As the District Court below pointed out, Firestone explicitly instructed that a Benefit Plan may confer discretionary authority sufficient to trigger the deferential standard of review on either a fiduciary or an administrator. See, Marx, 2001 WL, at *3, note 2, citing, Firestone, 489 U.S. at 115. Furthermore, the Third Circuit case law cited by Marx is inapposite. See, e.g. Gritzer v. CBS, Inc., 275 F.3d 291, 295 (3d Cir. 2002) (holding that an Administrator's denial of benefits under a pension plan that was governed by ERISA was subject to de novo review, where the administrator did not in fact exercise discretion when making denial of benefits). Neither party contends here that MetLife did not in fact exercise discretion in denying Marx' benefits in this instance. Additionally, the language of  ERISA itself specifically allows a "named [ERISA] fiduciary" to delegate its fiduciary responsibilities to non-fiduciaries. See, 29 U.S.C. 1105(c)(1) (instructing that "[t]he instrument under which a plan is maintained may expressly provide for procedures ...for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities ... under the plan.").

    Furthermore, Marx' allegation that the prior correspondence between Meridian and MetLife demonstrates an "undeniable course of dealing" between the parties is far from concrete. The subsequent letter, from Meridian to the claimant, Ms. Williams, informs her that "based on Metropolitan Life's review of your file...[MetLife] ha[s] no alternative but

to uphold their previous decision to terminate your LTD claim." See, II Appendix 411 [emphasis added]. Clearly, even in this one instance that Marx offers, one could reasonably assume that Meridian had delegated final decision making authority to MetLife, with regard to the claimant's right to LTD benefits. This court has previously instructed that "[a]lthough extrinsic evidence can be used to show that a contract is ambiguous ... extrinsic evidence cannot be used to create an ambiguity." U.A.W. v. Skinner Engine Co., 188 F.3d 130 (3d Cir. 1999). (noting also that a party offering such extrinsic evidence "must produce objective facts, not subjective and self-serving testimony, to show that a contract which looks clear on its face is actually ambiguous.").

We find that the language of the Plan, and specifically 6.04(j), is clear on its face in granting discretionary authority to MetLife to determine eligibility for LTD benefits under the Meridian Plan. Since the language is clear on its face, we reject the extrinsic "course of dealing" evidence offered by Marx. See, Epright v. Environmental Res. Mgt., Inc. Health & Welfare Plan, 81 F.3d 335, C.A.3 (Pa.),1996 ("[P]ast practice is of no significance where the plan document is clear."). We therefore affirm the District Court's finding that a deferential arbitrary and capricious standard of review was proper in this instance.

Accordingly, we will affirm the Order of the District Court, granting Defendant's motion for summary judgment, and dismiss Marx' claim in full.

_____

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.


                                          /s/ Julio M. Fuentes
                        Circuit Judg