

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-27-2004

# Post v. Kidspeace Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4328

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Post v. Kidspeace Corp" (2004). *2004 Decisions.* Paper 770.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/770

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 02-4328 & 02-4402

DAVID R. POST; CAROL A. POST, Husband and Wife,
Individually and as Parents and Natural Guardians of Kristen M. Post,

Appellants at No. 02-4328

v.

KIDSPEACE CORPORATION,

Appellant at No. 02-4402

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 01-cv-06112
(Honorable Franklin S. Van Antwerpen)

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 29, 2003
Before: SCIRICA, *Chief Judge*, NYGAARD and AMBRO *Circuit Judges*

(Filed: April 27, 2004)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

This is a cross-appeal from an order of summary judgment approving the

termination of plaintiff's health care benefits. Although we disagree with the able

District Court on the appropriate standard of review, we agree with its interpretation of the plan language. But we will vacate and remand to the District Court for further development of plaintiff's equitable estoppel claim.

**I.**

In 1993, plaintiff, Dr. David Post, was employed as a dentist by KidsPeace Corporation. Thereafter, he and his family participated in the KidsPeace Health Care Plan. In 1996, Dr. Post developed severe joint problems and was ultimately diagnosed with irreversible arthritis.

The KidsPeace Health Care Plan provides that termination is one of the five enumerated ways an employee, the employee's spouse and their dependents lose health care benefits. The Plan provides:

> Coverage under this Plan for you and your covered dependents will terminate on the earliest of the following dates:
>
> 1. The date of the termination of the Plan, or the date the Plan ceases for the class of employees to which you belong; or
>
> 2. The last date of the month in which you cease to be actively at work as a full-time employee; or
>
> 3. The date an employee or dependent ceases to be eligible for coverage under the Plan; or
>
> 4. The date of entry to the military service of any country or international organization on a full-time active duty basis other than scheduled drill or other training not exceeding one month in any calendar year; and
>
> 5. *The last day of the month in which an employee is terminated.*

2

*Cessation of active work shall be deemed termination of employment, except if an employee is not working because of an approved leave of absence, temporary layoff, or for illness or injury. Coverage will be continued during that time until discontinued by the Employer.* (emphasis added).

The KidsPeace Organization Employee Handbook, which Dr. Post received in 1993, contains the following language: "Status of Employment – When Long Term Disability benefits take effect, employment with KidsPeace will be terminated."[1]

The "Continuation of Coverage" section in the Health Care Plan states: "If you become ineligible for coverage as the result of a change in your employment status, your coverage ends the date of termination." The section continues, "[a] covered spouse of an employee may elect to continue coverage under the KidsPeace Corporation group plan on a self-pay basis if they lose group health coverage for any of the following reasons: . . . 4. the employee (spouse) becomes entitled to Medicare; . . . ."

In 1996, KidsPeace distributed a newsletter to its employees announcing various changes and enhancements to the Health Care Plan. The newsletter stated: "Health Care Plan coverage has been extended to provide coverage for the entire length of continuous disability. (Previously, coverage terminated after weekly disability income ended.)." In

---

[1]We note that long-term disability benefits are separate from benefits under the Health Care Plan. According to the employee handbook, long-term disability benefits provide "55% of salary to a maximum of $5,000.00 per month." JA 182a. Nothing in the subsection on long-term disability mentions health care benefits, which are addressed in a separate sub-section of the handbook.

3

September of 1997, KidsPeace issued to its employees a new Summary Plan Description. An accompanying memorandum contained the following language: "Disabled Employees (Effec. 08/96)–on medical leave with full medical benefits until recovery."

On October 23, 1998, two years after being diagnosed with arthritis and one year after the Health Care Plan went into effect, Dr. Post went on short-term disability because of his arthritis. When it became apparent that Dr. Post would not be able to return to work, KidsPeace informed him that he would become eligible for long-term disability benefits on April 21, 1999. Additionally, Dr. Post received Social Security Disability benefits retroactive to April 1, 1999. He was notified by the Social Security Administration that he would automatically become eligible for Medicare two years after his social security benefits commenced, on April 1, 2001. During his disability, Deborah Blaker, Senior Benefits Administrator of KidsPeace, and Dr. Post exchanged a series of letters regarding the coordination of Medicare benefits and benefits under the KidsPeace Health Care Plan.

On October 26, 1998, Dr. Post wrote Blaker to inquire: (1) which employee benefits would continue during his disability; and (2) what procedural responsibilities he had to fulfill to secure the benefits. In this letter Dr. Post also wrote the following: "When I spoke with you last week to discuss continuation of benefits during disability, you informed me that KidsPeace would cover the cost of health insurance of my family for as long as I remain disabled (unless Medicare benefits become effective)." On March

18, 1999, the KidsPeace employee benefit department sent a letter to Dr. Post explaining that when Dr. Post began to receive long-term disability benefits, his employment with KidsPeace would be terminated. The letter noted that health care benefits would be terminated only if: (1) the disability ended; (2) Dr. Post turned 65; or (3) Dr. Post passed away. The letter did not say that health care benefits would be terminated upon Dr. Post's eligibility for long-term disability status or Medicare.

On June 29, 1999, approximately two months after Dr. Post went on long-term disability, his counsel wrote KidsPeace for clarification of the March 18th letter. On July 28, 1999, Blaker responded, stating that Dr. Post would no longer be eligible for enrollment in the medical plan when he became eligible for Medicare. The letter also stated that Dr. Post and his family could continue medical coverage through COBRA.

In recognition of his receipt of Social Security Benefits, and eventual qualification for Medicare benefits, Dr. Post wrote Blaker the following: "Therefore, I will automatically become eligible for Medicare on April, 1, 2001. When I qualify for Medicare benefits, I will most likely opt to continue the KidsPeace health Plan under the COBRA provision. I would appreciate your forwarding me the appropriate forms for this conversion."

Dr. Post became eligible for Medicare on April 1, 2001, at which time his health care coverage under the KidsPeace Health Care Plan was terminated. On December 6, 2001, Dr. Post filed a claim with the District Court for the Eastern District of

Pennsylvania under ERISA, 29 U.S.C. § 1332 *et seq.*, seeking health care coverage under the KidsPeace Health Care Plan, as it existed prior to the denial of benefits.

Finding the terms of the Plan were too ambiguous to confer discretionary authority on the Administrator with regard to the decision to terminate Dr. Post's health care benefits, the District Court applied a de novo standard of review. But the Court held that the Plan terms authorized termination of Dr. Post's medical benefits at the time Dr. Post went on long-term disability, and granted summary judgment against Dr. Post on his substantive claim. In reaching its decision, the District Court found no detrimental reliance based on the March 18, 1999 letter. Both parties appealed. We have jurisdiction to review the final order of the District Court under 28 U.S.C. § 1291.

## II.

Our review of a summary judgment order is de novo. *Curley v. Klem*, 298 F.3d 271, 276 (3d Cir. 2002). We apply the same test employed by the District Court under Fed. R. Civ. P. 56(c). *Id.* Accordingly, the District Court's grant of summary judgment was proper only if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III.

As a threshold matter, we must determine the proper standard of review under ERISA. We exercise plenary review of the standard applied by the District Court. *See Gritzer v. CBS, Inc.*, 275 F.3d 291, 295 (3d Cir. 2002).

In *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101 (1988), the Supreme Court stated that "a denial of benefits challenge under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. Additionally, even if the plan at issue grants discretion, where a trustee fails to act or exercise his or her discretion, de novo review is appropriate. *Gritzer*, 275 F.3d at 296. Where the plan grants discretion, and it is exercised, the proper standard of review is the more deferential arbitrary and capricious standard. *Id.*

The District Court applied the de novo standard to the Administrator's decision because: (1) the Health Care Plan was vague and ambiguous regarding the grant of discretion to the Plan Administrator; and (2) even assuming a grant of discretion, the Plan Administrator did not make a discretionary determination. We cannot agree.

To determine the proper standard of review, we begin with the language of the plan. *Luby v. Teamsters Health, Welfare & Pension Trust Funds*, 944 F.2d 1176, 1180 (3d Cir. 1991). The KidsPeace Health Care Plan contains the following clause:

> **Administration** - The Plan Administrator is KidsPeace Corporation. . . . The Plan Administrator has the discretionary right to interpret the plan conditions. Determinations by the Plan Administrator are binding on all parties.

The District Court found that two distinct meanings could be attributed to "plan conditions," thereby making the grant of discretion ambiguous. The court found that plan

conditions could refer to the events or medical procedures that must occur before a claim on the plan is triggered, or they could refer to the plan's terms that limit liability.

We find these meanings, in essence, identical. Plan conditions setting forth those "events or medical procedures that must occur before a claim on the plan is triggered" are sufficiently equivalent to "terms that limit the plan's liability" to constitute a cognizable grant of discretion to the Plan Administrator.[2]

The District Court also determined that the arbitrary and capricious standard should not be applied because KidsPeace provided no explanation for the termination of benefits and, moreover, no discretionary decision was made.[3]

The correspondence between Blaker or KidsPeace's Employee Benefits Department and Dr. Post provided an explanation of the reasons that led to the denial of

---

[2]We note as well that the discretion required to trigger the more deferential arbitrary and capricious standard of review need not be explicitly stated in the employee welfare plan or summary plan description, but may be implied from its terms. *Marx v. Meridian Bancorp, Inc.*, 32 Fed. Appx. 645, 649 (3d Cir. 2002). The statement in the Plan that "[t]he Plan Administrator has the discretionary right to interpret the plan conditions" supports the inference that KidsPeace intended to, and in fact did, reserve discretion under the Plan.

[3]Without a stated explanation for the denial of benefits, no interpretation exists on which to confer deference. *See Dewitt v. Penn-Del Directory Co.*, 106 F.3d 514, 520 (3d Cir. 1997) (stating that arbitrary and capricious review will uphold "a plan *interpretation* even if we disagree with it, so long as the administrator's *interpretation* is rationally related to a valid plan purpose and is not contrary to the plain language of the plan.") (emphasis added); *see also* 29 U.S.C. § 1133(1) (requiring that "[i]n accordance with regulations of the Secretary, every employee benefit plan shall – (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant . . .").

benefits. At a minimum, the record contains two letters from KidsPeace to Dr. Post in which KidsPeace explains that Dr. Post will no longer be eligible for enrollment in the Health Care Plan when Medicare benefits become effective. JA 219, 220.[4]

As noted, the District Court determined that the Plan Administrator made no discretionary decision. The first discretionary decision—that Dr. Post qualified for short-term disability—was made by the third-party disability insurance carrier. The switch to long-term disability then occurred either automatically or was made by another third party.[5] At this point, under the language of the Plan, KidsPeace was authorized to end benefits. *See infra* pt. IV. If Dr. Post's entitlement to benefits under the Plan ended April 30, 1999—the last day of the month in which long-term disability benefits took effect—then KidsPeace's decision to continue providing health benefits under the Plan for an additional twenty-three months until Dr. Post was eligible for Medicare constitutes discretionary action on the part of KidsPeace.

---

[4]The record also indicates that at some point prior to the letter he wrote on October 26, 1998, Dr. Post had been informed of KidsPeace's interpretation of the Plan, namely that under the Plan, KidsPeace was permitted to and would cease paying for Dr. Post's benefits at the time he became eligible for Medicare. JA 216.

[5]The Handbook states, "when short term disability benefits are exhausted and the employee can not return to work, 'long term' or 'total disability' will come into effect." JA 181a. Short-term disability can only last 26 weeks. *Id.* Blaker's deposition is somewhat unclear on whether this transition occurs automatically or at the discretion of a third party. The resolution of this question does not influence our analysis of the standard of review.

Consequently, we will apply an arbitrary and capricious standard, rather than a de novo standard of review. Under this standard, a court may overturn KidsPeace's determination of Dr. Post's ineligibility for continued benefits only if KidsPeace's decision was "clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan. A court is not free to substitute its judgment for that of the defendants in determining eligibility for plan benefits." *Smathers v. Multi-Tool, Inc.*, 298 F.3d 191, 199 (3d Cir. 2002) (quoting *Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir. 2000)). "Furthermore, whether a claim decision is arbitrary and capricious requires a determination whether there was a reasonable basis for [the administrator's] decision, based upon the facts as known to the administrator at the time the decision was made." *Id.* at 199-200 (internal quotations omitted).

## IV.

Applying a de novo standard of review to KidsPeace's denial of Dr. Post's benefits, the District Court held that the Plan Administrator properly followed the terms of the KidsPeace Health Care Plan and the KidsPeace Organization Employee Handbook in terminating Dr. Post's health care benefits following his eligibility for Medicare. Although the terms of the Plan and supporting documents are not entirely clear, we agree with the District Court that KidsPeace's decision to end Dr. Post's benefits when he became eligible for Medicare is not arbitrary and capricious. Nevertheless, we will

10

remand to the District Court for further development of Dr. Post's equitable estoppel claim.

The KidsPeace Health Care Plan provides that termination is one of the five enumerated ways an employee, the employee's spouse and their dependents lose health care benefits. The KidsPeace Organizational Employee Handbook, which Dr. Post received, states that employment is terminated when long-term disability benefits take effect.[6] Therefore, it would appear that health benefits could have been terminated on the last day of April 1999, the month in which Dr. Post went on long-term disability. But KidsPeace continued benefits for almost two years until Dr. Post became eligible for Medicare.

The "Continuation of Coverage" section in the Health Care Plan could reasonably be read to require KidsPeace to continue paying health benefits for Dr. Post's family members until Dr. Post became eligible for Medicare. A clause in this section states: "A covered spouse of an employee may elect to continue coverage under the KidsPeace Corporation group plan on a self-pay basis if they lose group health coverage for any of the following reasons: . . . 4. the employee (spouse) becomes entitled to Medicare; . . . ." Although this clause could be read to imply a conflict with the clause governing termination of benefits, the continuation of coverage clause indicates that Medicare

_____

[6]As noted *supra* n.1, the record indicates that long-term disability benefits differ from benefits under the Health Care Plan.

11

entitlement does conclusively end any responsibility of KidsPeace to pay for health benefits. We note as well, as the District Court did, that the opening sentence of the continuation of coverage section does not support Dr. Post's argument that the section creates a conflict with the termination of benefits section of the Plan. This sentence provides: "If you become ineligible for coverage as the result of a change in your employment status, your coverage ends the date of termination." As noted, eligibility for long-term benefits terminates employment with KidsPeace.

Dr. Post notes correctly that the KidsPeace Health Care Plan does not explicitly identify long-term disability status or Medicare eligibility as an event that terminates benefits. As noted, Dr. Post had been placed on long-term disability status and was receiving Medicare benefits. Nonetheless, the terms of the Plan and the definition in the employee handbook demonstrate that the Administrator's decision to end benefits was not arbitrary and capricious.

Whatever ambiguity may exist in the KidsPeace Health Plan and its application, we fail to see how the Plan language supports the extension of health care benefits beyond Medicare eligibility to the lifetime benefits which Dr. Post seeks. As an example of the Plan's ambiguity, Dr. Post argues that the Health Care Plan does not allow a disability to cause the employee's termination, citing the following language in the termination of benefits section of the Plan: "Cessation of active work shall be deemed termination of employment, except if an employee is not working because of an approved

12

leave of absence, temporary layoff, or for illness or injury. Coverage will be continued during that time until discontinued by the employer."

But Dr. Post's interpretation of this clause to preclude long-term disability status from constituting termination directly contradicts the definition contained in the Employee Handbook, which states that long-term disability status terminates employment. The clause relied on by Dr. Post only delineates those situations that do not automatically result in termination of employment. It does not bar KidsPeace from terminating benefits in any of the conditions listed in the Plan. The exception announced by this language is to the mechanical application of the termination policy, and does not constitute a complete prohibition against terminating benefits for employees on long-term disability. As KidsPeace argues in its brief, "[i]f KidsPeace had intended for the Plan to provide coverage for disabled employees in perpetuity the Plan would have explicitly said so." In fact, the last sentence of this clause reads, "[c]overage will be continued during that time until discontinued by the employer." Therefore, the Plan specifically grants KidsPeace the discretion to end benefits for an employee who has ceased active work due to injury or illness.

KidsPeace's interpretation of its Plan satisfies the arbitrary and capricious standard of review.[7] Under this standard of review, the Plan Administrator's decision to extend

_____

[7]Dr. Post argues that the District Court erred in failing to interpret ambiguities in the Plan in accordance with the reasonable expectations of the insured under the principle of
(continued...)

13

benefits past long-term disability, and to terminate benefits at Medicare eligibility, was reasonable.[8]

## V.

The District Court raised the issue of equitable estoppel based on KidsPeace's erroneous interpretation in its March 18, 1999 letter, and found that no estoppel claim could be established. The District Court found that equitable estoppel had no application in this situation because: (1) the letter was corrected within three months; (2) Dr. Post did not alter his actions in reliance on the erroneous letter; and (3) Dr. Post continued to receive KidsPeace health care benefits for two years—until April 2001—so that no harm in fact occurred. Two other non-Plan documents issued by KidsPeace—the 1996 newsletter and 1997 memorandum were not discussed. We will remand for further

---

[7](...continued)

*contra proferentem. See Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1257-58 (3d Cir. 1993). "Under that rule, if, after applying the normal principles of contractual construction, an insurance contract is fairly susceptible of two different interpretations, . . . the interpretation that is the most favorable to the insured will be adopted." *Id.* at 1257 (internal quotations omitted). Because KidsPeace's decision to end benefits at Medicare eligibility was reasonable, we do not reach this issue.

[8]We find as well that the two extrinsic documents pointed to by Dr. Post do not render KidsPeace's decision to end benefits at Medicare arbitrary and capricious in light of language in the Plan and Handbook supporting its decision. This evidence may, however, be considered in Dr. Post's claim of detrimental reliance, discussed *infra* pt. V.

development of Dr. Post's estoppel claim based on these representations made by KidsPeace.[9]

An equitable estoppel claim is cognizable under ERISA. 29 U.S.C. § 1132(a)(3). We have held that this section permits an ERISA beneficiary to recover benefits under an equitable estoppel theory, upon establishing: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the misrepresentation; and (3) extraordinary circumstances. *Smith v. Hartford Ins. Group*, 6 F.3d 131, 137 (3d Cir. 1993).

Dr. Post argues that further evidence is required on the question of whether he detrimentally relied on misrepresentations in KidsPeace documents during the period between his diagnosis and the time his injury became debilitating. Dr. Post claims that he relied on misrepresentations by KidsPeace at a time when he could have investigated other opportunities for insurance under plans which did not end benefits upon Medicare eligibility. As support for his estoppel claim, Dr. Post points to two documents: A KidsPeace newsletter from 1996 with the title "Important: Health Care Plan Changes," which noted, "Health Care Plan coverage has been extended to provide coverage for the entire length of continuous disability. (Previously, coverage terminated after weekly

---

[9]KidsPeace argues that Dr. Post failed to raise his estoppel argument in the District Court, and therefore this argument is waived. *See Gass v. Virgin Islands Telephone Corp.*, 311 F.3d 237, 246 (3d Cir. 2002). Nonetheless, the District Court clearly addressed the issue of detrimental reliance in its memorandum opinion. *See* Mem. Op., at 19 ("Yet, this grave error [March 18, 1999 letter] did not lead to Dr. Post's reliance to his detriment that would trigger estoppel as Plantiffs' allege.").

disability income ended.);" and a September 8, 1997 memorandum accompanying the Summary Plan Description that highlighted "changes and enhancements" to the Plan, including the following: "Disabled Employees (effec. 08/96) - on medical leave with full benefits until recovery."

Dr. Post claims that KidsPeace should be estopped from discontinuing his coverage based upon these misrepresentations made before he became totally disabled. We agree that this matter requires further factual development, and we will therefore remand this issue to the District Court for further proceedings on the issue of whether Dr. Post is entitled to benefits under an estoppel theory based on the KidsPeace newsletter and memorandum.

## VI.

For the foregoing reasons we will vacate the grant of summary judgment and remand for further development of the record and consideration of plaintiff's equitable estoppel claim.

16