Crystal STITH, Plaintiff,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.

Civil Action No. 03–4950(JBS).

United States District Court, D. New Jersey.

Feb. 14, 2005.

David S. Bross, Esq., Bross & Group, P.A., Cherry Hill, NJ, for Plaintiff.

Jane Andrews, Esq., Seth Ptasiewicz, Esq., Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Newark, NJ, for Defendant.

## OPINION

SIMANDLE, District Judge.

This matter comes before the Court on cross-motions for summary judgment by Defendant Prudential Insurance Company of America and Plaintiff Crystal Stith. Plaintiff alleges that Prudential's decision to terminate her long-term disability benefits under a group contract of insurance for disability coverage with Plaintiff's employer violates Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a). The principal issue to be addressed is whether Plaintiff has demonstrated that Prudential's decision to discontinue benefits was arbitrary and capricious upon review of the administrative record existing at the time Prudential made its determination. For the reasons discussed herein, Defendant's motion for summary judgment will be denied and Plaintiff's will be granted.

## BACKGROUND

This case arises out of a denial of disability benefits by the Defendant, Prudential Insurance Company of America ("Prudential"), to the Plaintiff, Crystal Stith ("Stith"). Plaintiff seeks payment of disability benefits under an employee welfare benefit plan, as defined by ERISA, as amended, 29 U.S.C. § 1001, *et seq.* The ERISA plan was established and maintained by Stroock & Stroock & Lavan, LLP ("Stroock"), for the purpose of providing disability benefits to its employees. The Plaintiff was employed as a Client Accounting Operations Manager by Stroock from February 1981 to December 22, 1998 when she stopped working, claiming total disability.

On January 18, 1999, Plaintiff applied for disability benefits, contending that she was disabled due to the effects of interstitial cystitis. This condition, for which

there is no cure, causes severe pain and burning in the pelvic area, and a frequent and urgent need to urinate. In support of her application, numerous medical records were attached or obtained, including a letter dated January 18, 1999, prepared by Dr. Michael A. Pontari, a urologist responsible for Plaintiff's care, who is an associate Professor of Urology at Temple University School of Medicine. Dr. Pontari supported Plaintiff's application for disability, indicating that Plaintiff was unable to return to work. (Plaintiff's Ex. B.) Plaintiff first came under Dr. Pontari's care in August, 1998, when he furnished a comprehensive examination report to her forwarding physician, Andrew Weitzel, D.O., dated August 27, 1998. (PRU 0537–0538.) Dr. Pontari addressed her chronic pain and prescribed hydroxyzine in addition to the Elavil and Percocet which had been prescribed. (*Id.*)

On April 13, 1999, Defendant approved Plaintiff's claim for short-term disability, indicating that benefits had been issued for the period December 29, 1998 through March 31, 1999. The Defendant further indicated that the Plaintiff satisfied the definition of total disability throughout the 13–week "Elimination Period" for long term disability benefits and that her claim was approved, effective March 23, 1999. The Defendant also informed Plaintiff that the information received from Dr. Pontari supported its conclusion that Plaintiff was able to work with unlimited access to a restroom. Defendant also mentions a conversation with Dr. Pontari, who indicated that Plaintiff was able to work as of April 5, 1999. As a result, Defendant terminated Plaintiff's benefits as of April 5, 1999. On May 1, 1999, the Plaintiff appealed the denial by Prudential in writing, attaching additional medical records. Furthermore, on May 20, 1999, Dr. Pontari wrote a letter to Defendant's Disability Consultant indicating that because of the Plaintiff's ongoing pelvic pain she was still unable to work. (Plaintiff's Ex. H). On June 14, 1999, Defendant again wrote to Plaintiff indicating that further medical records were requested from Plaintiff's treating physicians. (Plaintiff's Ex. I.)

On July 26, 1999, Defendant notified Plaintiff that her benefits would be reinstated for the period from April 5, 1999 through August 31, 1999. Defendant based this decision upon the review of additional medical documentation it had requested and a conversation with Plaintiff about her daily activities. (Plaintiff's Ex. J.) The letter also advised Plaintiff of her right to appeal the decision.

On August 5, 1999, Dr. Pontari again wrote to the Defendant, indicating that Plaintiff was still disabled and that it would be reasonable to extend Plaintiff's disability until January 1, 2000. (Plaintiff's Ex. K.) Furthermore, Plaintiff's family physician, Leonard M. Kabel, D.O. also wrote to the Defendant, opining that Plaintiff was still unable to work as of September 9, 1999. (Plaintiff's Ex. L.)

On December 2, 1999, Defendant informed Plaintiff's representative at that time, Dr. Lifrak, of its decision to reinstate Plaintiff's long term disability benefits as of September 1, 1999. (Plaintiff's Ex. O.) On March 21, 2000, Dr. Lifrak wrote to Defendant, confirming a conversation regarding a proposed lump-sum settlement of Plaintiff's claim. (Plaintiff's Ex. P.)

Plaintiff continued to receive monthly long-term disability benefits until May 1, 2001, when the Defendant terminated her benefits. Defendant based its decision on the finding that Plaintiff was not disabled. Total disability exists under the long term disability (LTD) aspect of the policy when Prudential determines that all of these conditions are met:

(1) Due to sickness or accidental injury both of these are true:

(a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation.

(b) After the Initial Duration of a period of Total Disability, You are not able to perform, for wage or profit, the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience.

(2) You are not working at any job for wage or profit.

(3) You are under the regular care of a Doctor.

(*See* Andrews Cert. Exhibit A, at p. 19.)

The initial duration under the Plan for LTD benefits for total disability is 24 months. At the conclusion of the initial duration, Prudential will conduct an evaluation to determine the claimant's eligibility for benefits beyond that period. *See* Andrews Cert. Exhibit B.

Meanwhile, it is noted, the Social Security Administration found Ms. Stith to be totally disabled as of December 15, 1998, for which benefits have been paid to her since March of 1999 under the Social Security Act, 42 U.S.C. § 405, et seq., pursuant to a finding made after a hearing by ALJ Daniel W. Shoemaker on January 29, 2003. (Pl.Ex. X, PRU 0266–0272.)

On October 20, 2003, Plaintiff filed the instant Complaint.

### DISCUSSION

*Summary Judgment Standard*

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it might

affect the outcome of the suit under the applicable rule of law. *Id.*

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (quoting *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. 2505.

The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions. *Weissman v. United States Postal Serv.*, 19 F.Supp.2d 254 (D.N.J.1998). When ruling on cross-motions for summary judgment, the court must consider the motions independently, *Williams v. Philadelphia Hous. Auth.*, 834 F.Supp. 794, 797 (E.D.Pa.1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994), and view the evidence on each motion in the light most favorable to the party opposing the motion. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

*ERISA Standard of Review*

■ When a disability plan grants an administrator discretionary authority to construe the terms of the plan or to determine eligibility for benefits, courts ordinarily may reverse the denial of benefits only if the administrator's decision was "arbitrary and capricious." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). This standard of review applies whether the administrator's decision was based on the interpretation of the plan or on factual

determinations. *Mitchell v. Eastman Kodak, Co.*, 113 F.3d 433, 438 (3d Cir.1997).

■ However, when an insurance company both determines eligibility for benefits and pay benefits out of its own funds, a court reviews the denial of benefits under a standard of "heightened arbitrary and capricious" review. *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377, 378 (3d Cir. 2000). A conflict of interest is presumed where an insurance company both determines eligibility for benefits and pays out those benefits from its own funds, because there exists "an active incentive to deny close claims in order to keep costs down and keep themselves competitive so that companies will choose to use them as their insurers." *Id.* at 388. Such potential self dealing warrants that the insurer's decision be closely inspected. *Id.* at 387–88. This Court must therefore look not only at whether the result is supported by reason, but also at the process by which the result was achieved.

In the present case, the Defendant, based on the explicit language of the Insurance Coverage Booklet, argues that it is not Prudential but rather Stroock, the employer, which actually administers the Plan. However, the Defendant concedes that the Long Term Disability Plan expressly grants Prudential the sole discretionary authority to determine whether a claimant is disabled: "A determination whether an individual is totally disabled and can continue to receive LTD benefits is wholly within the discretion of Prudential." (Defendant's Statement of Undisputed Material Facts at ¶ 14). Furthermore, it is Prudential that actually provides the plan benefits and also pays the benefits under the plan. (Defendant's Reply Brief, ¶ 6 footnote 1). Therefore, this Court holds that it must apply the "heightened arbitrary and capricious" standard of review in this case. The fact that the Plan names the employer, Stroock, as the administrator of the Plan is not dispositive.

■ When reviewing an insurance company's benefit decision, the Third Circuit applies a sliding scale approach under a heightened arbitrary and capricious standard of review. *Pinto*, 214 F.3d at 379. The court emphasized in *Pinto* that "the greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard." *Pinto*, 214 F.3d at 379 (citing *Vega v. National Life Ins. Serv.*, 188 F.3d 287, 297 (5th Cir.1999)). The Circuit Court in Pinto explained the decision to apply a heightened arbitrary and capricious standard of review by the fact that direct evidence of purposeful bias is rare in these cases so without more searching review, benefits decisions would be virtually immunized. *Pinto*, 214 F.3d at 379. However, if there is no other proof of bias except the conflict of interest, the court should engage in no more than a modicum of additional scrutiny. *See Lasser v. Reliance Standard Life Insurance Co.*, 146 F.Supp.2d 619, 623 (D.N.J.2001). Since in the present case there is no proof of bias, this Court will only take into consideration the conflict of interest and apply a modicum of additional scrutiny.

Finally, although reviewing Prudential's claim determination under a heightened arbitrary and capricious standard, this Court is limited to the record that was before Prudential at the time it rendered its final determination. *See Mitchell*, 113 F.3d at 440 (holding that under the arbitrary and capricious standard of review the 'whole' record consists of that evidence that was before the administrator when it made the decision being reviewed).

*Defendant's Review and Ultimate Denial of Plaintiff's Claim*

Plaintiff argues that Defendant's decision to terminate Plaintiff's long-term dis-

ability benefits under the Plan, as of May 1, 2001, and upon reconsideration in 2003, was arbitrary and capricious. First, Plaintiff contends that Defendant abused its discretion when relying solely on Dr. Buttarazzi's conclusion that pain was a totally subjective finding. Furthermore, the Plaintiff contends that Dr. Buttarazzi reached his conclusion that Plaintiff would be able to perform sedentary work, without considering all the evidence provided to him. In response, the Defendant argues that before denying the Plaintiff's LTD benefits, it undertook a thorough investigation both in-house and by Dr. Buttarazzi, an independent specialist. Since Dr. Buttarazzi claimed that he based his conclusion on reviewing all the Plaintiff's medical records over a seven year period and a surveillance videotape of Plaintiff, Prudential argues that it had the right to rely on his conclusion. Dr. Buttarazzi concluded that the major limitation Plaintiff encountered was her frequency of urination, requiring unrestricted access to bathroom facilities. He also concluded that there was no objective medical evidence to support Plaintiff's claim of pain.

■ Plaintiff Stith has the burden of proving entitlement for an insurance benefit under an ERISA employee welfare benefit plan. *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 46–48 (3d Cir.1993). When reviewing a denial of benefits under the heightened arbitrary and capricious standard a reviewing court may overturn the insurance company's decision only if Plaintiff demonstrates it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 45. Therefore, the first step for the Court is to analyze the evidence upon which the Defendant based its decision.

Plaintiff supported her claim of disability with letters from her treating doctors, attesting that she suffers from interstitial cystitis and that pain is a condition of that disease.[1] On January 18, 1999, Dr. Pontari sent a letter certifying that the Plaintiff suffers from interstitial cystitis. He also specified that the disease was characterized by urinary frequency, urgency, nocturnia and pelvic pain. (Plaintiff's Ex. B.) Another letter, dated May 20, 1999, was sent by Dr. Pontari to Pam Niedz, a Prudential disability consultant:

> On an initial disability form, I had listed as her only limitation a limited access to the bathroom. Since that time, she has had persistent pelvic pain, to the point where she has been unable to work, more so from the pelvic pain than the frequency of urination. She still has severe frequency and actually gets up every one hour at night; however, it is more the pain at this point that is the limiting factor. Therefore, I think it is reasonable to continue the disability for now. She is starting intravesical DMSO treatment in the next several weeks. We will also continue to try to address her pain issues.

(Plaintiff's Ex. H.) The next letter, dated August 5, 1999, also addressed the issue of pain, with Dr. Pontari again noting that "[Plaintiff] still continues to seem to be in pain and therefore she should be continued on disability." (Plaintiff's Ex. K.) Another letter, dated February 13, 2001, also cites bladder and pelvic pain as well as urinary frequency and urgency as Plaintiff's specific limitations. (Plaintiff's Ex. Z.) Dr. Pontari attests additionally that Plaintiff suffers from pelvic pain in his next letters dated February 27, 2002 and June 6, 2002

---

1. The diagnosis of interstitial cystitis does not appear to be in dispute. Biopsies of the bladder in 1993 were confirmatory. (See PRU 0522.) A second biopsy report in 1998 confirming interstitial cystitis is also mentioned, but the report itself is not in the record. (*See* Letter of Andrew K. Weitzel, D.O., dated January 15, 1998 (PRU 0512).)

respectively. (Plaintiff's Ex. FF.) On July 29, 2002, Dr. Pontari further indicated in a "Supplemental Questionnaire," that, assuming Ms. Stith were able to perform sedentary work, she could only do so less than two hours per day, one day per week. (*Id.*) In the last letter on record, dated December 2, 2002, and addressed to Jordan Irwin, another Prudential Disability Consultant, Dr. Pontari writes:

> I wanted to update you on Crystal Stith's condition. She has had no appreciable change in her symptoms. We are attempting to treat her with multi-modality medical therapies. She continues with chronic pelvic pain. Currently her pain is severe enough to prevent her from gainful employment. Unfortunately interstitial cystitis is a chronic condition. We are attempting to improve her pain level to the point where at some future date she may be able to work but currently this does not appear possible. We are continuing to pursue other avenues, and I have thus referred her to the pain center.

(Plaintiff's Ex. II.) Dr. Pontari updated the medical record of his continuing treatment in his report of May 6, 2003, in which he found that Ms. Stith continued to experience disabling pelvic pain and urinary frequency and urgency and was unable to perform any job. (Pl.Ex. UU, PRU 0157.)

Plaintiff's previous doctor, Dr. Kabel, also attested in a September 9, 1999 letter, to the fact that the Plaintiff suffers from "pain and urinary urgency to the point the symptoms render her unable to perform any of her duties at her usual occupation as an operations manager for her law firm employer." (Plaintiff's Ex. L.) Dr. Kabel further noted that "new treatments are now being initialized, by her urologist, in hope of providing some relief from this disabling condition but have yet to be very effective." (*Id.*) Furthermore, Dr. Weitzel, who also treated Ms. Stith, attested in a letter dated June 24, 1998 that the several

bladder biopsies Ms. Stith underwent clearly demonstrated that she suffers from interstitial cystitis. Indeed, as mentioned above, there is no dispute in this record that the diagnosis of interstitial cystitis was confirmed and re-confirmed by the repeated biopsies in Ms. Stith's medical records.

In order to assess Plaintiff's claim, Defendant hired Dr. Patrick J. Buttarazzi, an independent specialist in urology from Auburn, New York. (Andrews Cert. Exhibit G.) Dr. Buttarazzi reviewed the medical records submitted by Plaintiff and the surveillance videotapes with which he was provided by the Defendant. After reviewing the available medical records from 1993 until July 2000, Dr. Buttarazzi concluded in his letter to Prudential dated February 21, 2001, that "the claimant is suffering from a medically unaltered pelvic pain syndrome dating back to 1993." He also noted that "for some time she has been on a combination of pain relievers, anticholinergics and tranquilizers. Again this pharmacopeia does not seem to relieve the claimant's symptoms which remain unabated." (Plaintiff's Ex. V). Dr. Buttarazzi found Plaintiff's pain was not disabling, stating: "Since pain is a totally subjective finding, the medical records, tests and exams performed do not provide objective evidence for the pain syndrome." (*Id.*)

Meanwhile, Plaintiff was determined to be totally disabled under the Social Security Act based upon the findings of an Administrative Law Judge, which was forwarded to Prudential by letter dated February 7, 2003. (*See* Andrews Cert. Exhibit R.) Additional records of Ms. Stith's ongoing treatment were also forwarded to Prudential. Counsel agreed at Oral Argument that all records upon which the Social Security Administration relied had also been forwarded to Prudential for its review.

Dr. Buttarazzi next reviewed additional data regarding the Plaintiff in 2003 and in another letter addressed to Prudential and dated March 7, 2003, he concurred with Dr. Pontari as far as diagnosis and treatment: "It appears that she continues to suffer from a pelvic pain syndrome of varying intensity. It is apparent that Dr. Pontari has attempted every possible medication or combination of medications in an effort to alleviate the claimant's symptoms with absolutely no appreciable results." (Pl.Ex.LL.)

Dr. Buttarazzi was further asked by Prudential to specify what were the major limitations facing the Plaintiff. Dr. Buttarazzi concluded that "the major limitations are the frequency of urination requiring unrestricted access to bathroom facilities." (Plaintiff's Ex. LL.) Dr. Buttarazzi's prior finding from 2001 was implicitly repeated in 2003, but without mention of Plaintiff's continuing unabated complaints of pain, or of the Social Security disability finding. (Id.) Prudential then advised Plaintiff's counsel by letter dated March 19, 2003, that Plaintiff's appeal was denied based upon Dr. Buttarazzi's opinion that Plaintiff could still perform sedentary work and was not disabled within the meaning of the policy.

After examining all the evidence that Prudential alleges it considered when making its decision, the Court next examines whether Prudential's denial of benefits was arbitrary and capricious.

■ Plaintiff argues that Dr. Buttarazzi, and implicitly Prudential, failed to consider all the evidence provided when determining whether or not the Plaintiff was disabled. The Defendant argues that its determination that Plaintiff was not disabled was based upon reviews by its staff and Dr. Buttarazzi, who reviewed all the medi-

cal records plus the surveillance tapes of Plaintiff. To support its position, Defendant cites *Shapiro v. Prudential Ins. Co. of America*, 86 Fed.Appx. 493, 2004 WL 36221 (3d Cir.2004). In that case however, the surveillance video provided Prudential with objective evidence that the plaintiff was able to perform sedentary work. In the present case, the video surveillance that Prudential obtained, apparently produced no evidence contradicting Plaintiff's claim of total disability.[2]

Plaintiff also argues that it is arbitrary and capricious for Prudential to have relied solely on Dr. Buttarazzi's opinion that there was a lack of "objective evidence" of pain since the policy does not mandate presentation of "objective evidence." Defendant, in response, argues that since Dr. Pontari relied in large part on subjective evidence to reach his diagnosis of a disability, Prudential is free to ignore that.

Plaintiff cites *Mitchell v. Eastman Kodak, supra,* to support the notion that it is arbitrary and capricious to demand objective evidence when the Plan does not mandate it. (Plaintiff's Brief at 27). In *Mitchell,* the plaintiff, a plan participant, sought long term disability benefits from the Defendant Plan, claiming he was suffering from chronic fatigue syndrome ("CFS"). The administrator denied the participant's claim on the grounds that the Plan participant failed to provide objective medical evidence that his condition made him disabled. The Third Circuit held that it was arbitrary and capricious to reach that conclusion because the evidence from the treating physicians in that case was to the contrary. *Mitchell,* 113 F.3d at 442. The plaintiff's physicians indicated that the plaintiff was disabled due to CFS and that his condition precluded him from engaging in any gainful work. Furthermore, the

---

2. There is no description of the video surveillance in the record, and no indication that the video surveillance supports Prudential's decision. The video recording plays no role in the Court's decision.

defendant did not specify what additional kind of "objective" evidence, besides his doctors' observations, the Plan participant could provide to support his claim of disability. *Id.* at 442. Likewise, where the Plan, as in the instant case, was silent on the subject of "objective" evidence of disability, it was arbitrary for the administrator to engraft such a requirement and then impose it as a reason to deny benefits. (*Id.* at 442–43.) The Third Circuit thus affirmed the District Court's grant of summary judgment in claimant's favor. (*Id.*)

Prudential invokes *Myers v. Liberty Life Assurance Co.,* 2002 WL 1019029, 2002 U.S. Dist. LEXIS 8922 (E.D.Pa. May 20, 2002), for the assertion that a plan administrator is free to ignore a diagnosis of disability when the doctor relies on subjective evidence to reach his conclusion. (Plaintiff's Brief at 11.) The situation in *Myers,* however, can be easily distinguished from the present case. In *Myers,* a plan participant hurt her hand and was diagnosed with borderline right carpal tunnel syndrome. However, even the plaintiff's doctor admitted that the diagnosis was based primarily on the plaintiff's subjective complaints of pain. (*Id.* at 16.) Furthermore, numerous doctors observed that the trauma the plaintiff experienced, and her symptoms, were not related to any known physiology. (*Id.*) The doctors were not able to explain the connection between the arm injury and the plaintiff's discomfort. (*Id.* at 7.) In light of these facts, the court determined that the insurer did not abuse its discretion in denying the plaintiff's disability benefits claim, since there was no objective evidence as to the plaintiff's discomfort.

In the present case however, Prudential's conclusion that Plaintiff was not disabled cannot be reconciled with the medical evidence before it at the time it made that decision. The record before Prudential at the time it made its determination included the opinions of at least three doctors who had treated Plaintiff over time: Dr. Weitzel, Dr. Kabel and Dr. Pontari; all of those doctors, plus Dr. Buttarazzi, concluded that Ms. Stith suffers from interstitial cystitis giving rise to a chronic pain syndrome. The presence of interstitial cystitis is confirmed by objective evidence, namely the repeated biopsies performed on Ms. Stith, as noted above. Furthermore, both Dr. Pontari and Dr. Kabel concluded that the Plaintiff is suffering from chronic and frequently severe pelvic pain. Dr. Pontari found pelvic pain to be a symptom that is consistent with the medical signs and findings for the condition with which Plaintiff suffered. Even Dr. Buttarazzi, in his letters to Prudential, concludes that Plaintiff "continues to suffer from a pelvic pain syndrome of varying intensity." (Plaintiff's Ex. LL.) He does not dispute that the Plaintiff suffers from chronic and frequently severe pelvic pain, the need for urination every 20 minutes, and painful burning on urination. Furthermore, Dr. Buttarazzi does not disagree with Dr. Pontari that these symptoms are reasonably consistent with the medical signs and findings. (Exhibit FF.)

Nonetheless, and inexplicably upon this record, in his conclusion, Dr. Buttarazzi dismisses pain as a merely "subjective" finding without offering any other explanation. Prudential does not address this contradiction, choosing instead to adopt Dr. Buttarazzi's conclusory findings. Nowhere does Dr. Buttarazzi offer any explanation for his disagreement with the finding of the treating specialist, Dr. Pontari, on the specific matter of disabling pain.

This Court finds Prudential's reliance on Dr. Buttarazzi's opinion without regard for conflicting medical opinions of treating physicians and Plaintiff's treatment records to be erroneous. The Court finds it is arbitrary and capricious for Prudential to discount the weight of medical authority

regarding Plaintiff's chronic, severe, unrelieved pain and rely on a consulting doctor who agrees the patient suffers from interstitial cystitis producing pelvic pain only to conclude that the pain is a subjective finding and thus not a basis for benefits under the Plan. Under the arbitrary and capricious standard, it is recognized that the decision maker may choose to credit some evidence over other evidence. Similarly, the Plan has broad discretion to weigh competing evidence. The decision maker may not, however, adopt a consultant's opinion in the face of overwhelming evidence to the contrary, without some explanation for doing so.

In the present case, there is almost nothing in the record supporting Prudential's denial of benefits. The Defendant repeatedly mention the "significant medical evidence" as a reason for denying Plaintiff's benefits. Throughout its briefing in this case, however, Defendant never specifies what evidence it is referring to or where this significant evidence might be found. Dr. Buttarazzi's conclusion that pain is a subjective finding is arbitrary, as

Dr. Buttarazzi does not explain his medical basis for that conclusion or indicate why the degree of pain in this case is doubtful. It is apparently Dr. Buttarazzi's hunch that Plaintiff is fabricating her chronic complaints of severe pain even though he has not examined her and disregards the impressions of the specialists who have actually treated her over a period of several years. This hunch, even by a specialist, does not rise to the level of substantial medical evidence and it is insufficient to support Defendant's termination of disability benefits at the time the decision was made. In light of this conclusion, the Court need not consider Plaintiff's remaining arguments regarding Prudential's failure to obtain an independent medical examination and to consider the debilitating side effects of Plaintiff's medications.[3] Likewise, the Court need not consider whether Prudential's failure to address the finding of Ms. Stith's total disability by the Social Security Administration is further evidence of the unreasonableness of Prudential's decision upon the record that was available to it.[4]

---

3. Plaintiff argues that the Defendant failed to thoroughly investigate her claim before making a final decision regarding benefits. Plaintiff contends that the Defendant, among other things, never requested that Ms. Stith be physically examined. There is, however, no legal requirement that a plan administrator require an independent medical examination prior to finally adjudicating a claim for disability benefits under an ERISA-governed plan. See Cini v. The Paul Revere Life Ins. Co., 50 F.Supp.2d 419 (E.D.Pa.1999); Pokol v. E.I. duPont de Nemours & Co., Inc., 963 F.Supp. 1361 (D.N.J.1997). Moreover, in Pinto, the court held that a plan administrator does not have a duty to gather information additional to that submitted with the claim. The court found no additional duty to conduct a good faith, reasonable investigation. Pinto, 214 F.3d at 394. Therefore, Prudential was not under any obligation to investigate Plaintiff's claim beyond performing its review of the information submitted in support of it.

Finally, Plaintiff argues that although Prudential was presented with evidence regarding the debilitating side effects of her medication, it never requested Dr. Buttarazzi to address this limitation. Dr. Pontari, Plaintiff's own physician, was well aware of the side effects of the medication, yet even he did not classify these side effects to be a limitation. This Court thus concludes that Dr. Buttarazzi and Prudential were under no obligation to address this issue when not even Plaintiff's doctor considered it as a limitation.

4. Plaintiff additionally argues that Prudential completely ignored the Administrative Law Judge's decision awarding Social Security benefits to her. The Plaintiff concedes that Prudential is not bound by the Social Security Administration's determination. She argues, however, that the decision is instructive in the matter and could have been taken into consideration by the Defendant. The Defendant argues that it is not bound by the regulations nor case law governing awards of Social Se-

Therefore, in conclusion, the Defendant's decision to deny Plaintiff benefits was not supported by substantial evidence here and was thus arbitrary in nature. Defendant relied solely upon the conclusory, unsupported, and unexplained opinion of a doctor who never examined the patient and instead, overlooked the various and multiple opinions of Plaintiff's treating physicians and the medical records of severe pain associated with the condition from which Plaintiff indisputably suffered. Defendant's decision resulted from its unexplained disregard for credible contradictory evidence from Plaintiff's own physician, Dr. Pontari. Such self-serving action must be considered to be arbitrary and capricious.

## CONCLUSION

For the reasons expressed above, Plaintiff has carried her burden and demonstrated that Defendant's determinations discontinuing long term disability benefits as of May 1, 2001, were arbitrary and capricious. Defendant's motion for summary judgment is denied and Plaintiff's motion for the same is granted. The accompanying Order will be entered.[5]

curity Disability Benefits. In the alternative, the Defendant argues that even assuming that it should have considered the Social Security Administration's decision, Prudential's failure to do so was only harmless error.

The finding of disability under the Social Security Act, of course, represents a determination by an expert agency that the Plaintiff is unable to perform any gainful activity due to a disability that is expected to last twelve months or more. See 42 U.S.C. § 405, *et seq.* While it is troubling that Defendant's determinations make no reference at all to the finding of total disability, there is no legal requirement that a plan administrator must specifically address the decision of an administrative law judge when deciding whether a plaintiff is to be considered totally disabled.

In *Marx v. Meridian Bancorp Inc.*, 32 Fed. Appx. 645, 2002 WL 471248 (3d Cir.2002), the Third Circuit Court of Appeals affirmed a

## ORDER

This matter having come before the Court upon Defendant Prudential Insurance Company of America's motion for summary judgment [Docket Item No. 10–1] and Plaintiff Crystal Stith's motion for summary judgment [Docket No. 12–1]; and the Court having considered the parties submissions in support and in opposition thereto and the Oral Arguments of Counsel; and for the reasons stated in the Opinion of today's date; and for good cause shown;

IT IS this *14th* day of February, 2005 hereby

ORDERED that Defendant Prudential Insurance Company of America's motion for summary judgment [Docket Item No. 10–1] shall be, and hereby is, *DENIED*; and

IT IS FURTHER ORDERED that Plaintiff Crystal Stith's motion for summary judgment [Docket No. 12–1] shall be, and hereby is, *GRANTED*; and

IT IS DECLARED, ADJUDGED or DECREED that Plaintiff, Crystal Stith, was entitled to long-term disability bene-

district court decision which held that a Social Security Administration finding may be one factor among many that the Plan Administrator may consider when considering disability benefits. In that case, the court held that the Plan Administrator does not necessarily have to refer to the Social Security Administration decision, but it may nevertheless prove useful to do so. Moreover, in *Marx*, the district court emphasized that although the insurer's decision did not draw upon the Social Security Administration's determination, its own benefits decision was reasonably supported by the record before it.

5. Defendant will be required therefore to calculate Plaintiff's net back benefits for disability from May 1, 2001 (contractual amount less offset for Social Security disability benefits received) and pay same within forty (40) days hereof.

fits from Defendant, Prudential Insurance Company of America continuing on or after May 1, 2001; and

IT IS FURTHER ORDERED that Defendant shall promptly calculate the appropriate amount of net back payments to Plaintiff for her disability and pay same within forty (40) days hereof.